NATIONAL BANK OF COMMERCE (MERCHANTS' NAT. BANK v.). See Case No. 9,446.

NATIONAL BANK OF FAYETTEVILLE (MEAD v.). See Case No. 9,366.

## Case No. 10,037.

### NATIONAL BANK OF FREDERICKSBURG v. CONWAY et al.

[1 Hughes, 37; 14 N. B. R. 175, 513.] [1]

Circuit Court, E. D. Virginia. June 6, 1876.

DEEDS—ACKNOWLEDGMENT—INTEREST OF NOTARY—BANKRUPTCY—ASSIGNMENT EXECUTED.

1. A notary public is competent to acknowledge and certify a deed of trust, although he is interested as one of the beneficiaries in the trust.

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission. 14 N. B. R. 175, 513, contains only a partial report.]

2. If a deed of trust is actually delivered to the trustee, with power to record it when he deems proper, it is valid as against the assignee in bankruptcy, although it is not recorded until after the grantor's failure.

[Cited in Re Oliver, Case No. 10,492.]

[Cited in Collender Co. v. Marshall, 57 Vt. 234.]

[3. Cited in Bank of Benson v. Hove, 45 Minn. 43, 47 N. W. 449, to the point that recording is notice to a subsequent mortgagee notwithstanding the fact that the notary taking the acknowledgment was disqualified on account of interest, such disqualification not appearing on the face of the instrument.]

On July 20, 1875, Montgomery Slaughter executed to W. P. Conway a deed, conveying to him certain real estate in Fredericksburg, Virginia, in trust, to secure the payment of four negotiable notes drawn and indorsed by M. Slaughter & Son, a firm of which Montgomery Slaughter was the senior partner, payable at the banking house in Fredericksburg of Conway, Gordon & Garnett, a firm of which W. P. Conway was a member; one of the notes for one thousand dollars, payable on the 25th of September, 1875; another for fifteen hundred dollars, payable on the 15th of October, 1875; another for one thousand dollars, payable the 25th of November, 1875; and the fourth for two thousand dollars, payable on the 23d of December, 1875. This last note was dated July 20, 1875. This deed was acknowledged by the grantor and certified by G. W. Garnett, a member of the firm of Conway, Gordon & Garnett, on the day it was executed. At the time of the execution of the deed, Conway, Gordon & Garnett were holders and owners of the three first-named notes, aggregating three thousand five hundred dollars in amount, and they became owners of the note for two thousand dollars, shortly after the date of the deed. The note due the 25th of September was paid at maturity. That due the 15th of October was not paid but was protested. On the afternoon of this same day, the deed of trust, which had been kept in the safe of his bank, by W. P. Conway, trustee, ever since the 20th of July, was taken out and deposited for record in the office of the clerk of the proper court in Fredericksburg. At the time this deed was recorded the firm of Conway, Gordon & Garnett were holders and owners of the remaining three notes secured by the deed, aggregating four thousand five hundred dollars. On the 27th of October, 1875, a creditors' petition was brought in the district court of the United States, for this district, as a court of bankruptcy, praying that the said Montgomery Slaughter, and his firm, M. Slaughter & Son, and his son W. L. Slaughter might be adjudicated bankrupts; and, without contest, they were afterwards duly so adjudicated, in accordance with the prayer of the creditors' petition. On the 11th of November, 1875, the National Bank of Fredericksburg, a creditor of the bankrupt, brought their bill on the equity side of this court, with the usual allegations and charges, praying that the deed of M. Slaughter to W. P. Conway, of the 20th of July, 1875, might be set aside, as giving a preference to Conway, Gordon & Garnett, in contravention of the provisions of the 35th section of the general bankruptcy act of congress (Rev. St. § 5128 [14 Stat. 534]). To this bill, Conway, Gordon & Garnett have made answer, claiming that the deed was in fact bona fide, that it was legal under the laws of Virginia, and that it was not in contravention of the bankrupt act and its amendments, because it was made more than two months before the petition in involuntary bankruptcy was filed, and because, as they allege, M. Slaughter and M. Slaughter & Son, until unexpectedly protested on the 15th of October, 1875, had the confidence of the entire community; were considered entirely solvent; were believed to be gentlemen of extraordinary business qualifications, engaged in an exceedingly profitable business; that their paper rated with the best at the respondent's bank; and that their failure on the 15th of October, 1875, astounded the whole community.

The respondents also allege, in their answer, that their dealings in the paper of the bankrupt firm were always with the senior member, Montgomery Slaughter; that this bankrupt always refused to comply with the rule of their bank requiring a responsible indorser on all paper of the firm, on the ground that as he never indorsed for others he would not ask others to indorse for his house: and that instead of an indorser, the custom of said Slaughter, with the house of Conway, Gordon & Garnett, was always to give deeds of trust on the property of M. Slaughter embraced in the deed of the 20th of July, 1875, to secure the notes discounted for Slaughter & Son by the firm; that in no instance did said Slaughter fail to give such a lien in the previous five or six years, although the transactions were numerous; that in all of these transactions, the custom was to leave the deed of trust in the hands of W. P. Conway, the trustee, to be recorded when he thought proper, or when the holders of the notes discounted by C., G. & G. might require. In a statement of facts, agreed between all parties, it is further alleged, that it had been the usage of Conway, Gordon & Garnett to take these deeds from M. Slaughter, and to destroy them when the notes were paid, never putting any of them on record until this last deed. In a statement of facts by M. Slaughter, accepted by all parties as evidence, by consent, Mr. M. Slaughter alludes to several previous transactions, "similar to that of the 20th of July, 1875, in which the notes had been paid, and the deeds cancelled."

The Code of Virginia (1873, c. 114, § 5, p. 897) provides that "every deed of trust, etc., conveying real estate and goods and chattels, shall be void as to creditors, etc., until and except from the time it is duly admitted

to record in the county or corporation wherein the property embraced in the said deed may lie."

HUGHES, District Judge. There is no question here of actual fraud or of moral wrong-doing. The transaction of the 20th of July, 1875, was between men of the highest character, socially and in their pecuniary dealings. There is but one question in the case, which is, whether the writing, signed and acknowledged on the 20th of July, 1875, kept in the iron safe of Conway, Gordon & Garnett until the paper of Slaughter & Son had gone to protest on the 15th of October, 1875, and on the afternoon of that day recorded, is valid under section 5128 of the Revised Statutes of the United States. This statute is not a statute of frauds, but of disabilities. It establishes a policy. It makes it against the policy of the law for men, knowing the insolvency of their debtors, to exact or take deeds of preference from them. State laws permit this, and indeed encourage it. But congress declares a different policy, and places failing debtors in the same condition as to deeds, grants, and conveyances of preference, in which state laws place minors and femes covert as to contracts, and in which state laws place all adults who are in debt, but sui juris, as to deeds of gift. The word "fraud" occurs but once in this section 5128, and then not as implying moral or actual fraud, but only as implying a breach of the policy of the law just mentioned; the phrase in which the word occurs being "in fraud of the provisions of this act." I have nothing to do, therefore, with fraud as a crime, moral or legal. I have only to inquire whether the writing between M. Slaughter and Walter P. Conway, trustee, signed and acknowledged on the 20th of July, 1875, was in violation of the policy of section 5128, Rev. St., and therefore void.

The question whether this writing was properly acknowledged or not, which was so ably and elaborately argued at bar, is only a secondary one in the case. The primary question is, when did this writing become a deed as between the grantor and grantee? The acknowledgment of the writing by the grantor had reference only to its being recorded, and thereby made valid as against his creditors. If the question were only as to acknowledgment, I should decide, without hesitation, that it was properly acknowledged; for the teaching of the cases cited at bar seems to me plainly to be, that an interested person may take the acknowledgment of a deed when the act is merely ministerial; though if the act be judicial, such as taking the acknowledgment, after privy examination, of a married woman, an interested person cannot take it. Harkins v. Forsyth, 11 Leigh, 294; Carper v. McDowell, 5 Grat. 212; Horsley v. Garth, 2 Grat. 471; Taliaferro v. Pryor, 12 Grat. 277; Johnston v. Slater, 11 Grat. 321; Turner v. Stip, 1 Wash. [Va.] 319; Hampton

v. Stevens [1871] 10 Am. Law Reg. 107; Boswell v. Flockheart, 8 Leigh, 364; Dimes v. Grand Junction Canal Co., 16 Eng. Law & Eq. 63. Though the acknowledgment of this writing of the 20th of July, 1875, were good, that fact might not invalidate the deed; for it has been recently decided, by the supreme court of the United States, in Sawyer v. Turpin, 91 U. S. 114, that the recording of a deed may be within the period of prohibition imposed by the bankrupt law, and yet the deed itself be good against an assignee in bankruptcy, if executed before the period. Were it necessary, I should hold that that decision does not govern this case. A clear distinction may be drawn between this case (relating to real estate) and that decided in Sawyer v. Turpin (relating to personalty), founded on the distinction between the respective laws of Massachusetts and Virginia relating to fraudulent conveyances. The law of Massachusetts, on which the decision in Sawyer v. Turpin was rendered, declares that mortgages of personal property shall not be valid against any other person than the parties thereto, unless, etc., etc., the mortgage be recorded, etc. Whereas, the law of Virginia declares that every deed of trust, conveying real estate or goods and chattels, shall be void as to creditors, until and except from the time it is duly recorded. The deed of Montgomery Slaughter, signed and acknowledged the 20th of July, 1875 was void as to creditors, and was not a deed at all, until the 15th of October, 1875; and I doubt if the supreme court of the United States would hold that it took effect any earlier as to the assignee in bankruptcy representing the general creditors of the bankrupt. But, assuming that the decision in Sawyer v. Turpin governs this case, as to deeds which have become deeds between the parties to them, previously to the period of two months before bankruptcy, but recorded within that time, the further question is, when did this writing of the 20th of July, 1875, become a deed, good as between M. Slaughter and W. P. Conway, the parties to it? It cannot be claimed that this writing was, in the hands of W. P. Conway, until the 15th of October, 1875, an escrow; for, in strict law, an escrow is a deed delivered to a stranger, which is to become valid on the happening of some definite future contingency. From this writing having been delivered to the grantee by the grantor, and not to a stranger, it cannot be called, with technical accuracy, an escrow.

But was it in truth and in law a deed, so delivered and so accepted, until the day it was recorded in the office of the corporation of Fredericksburg? This I assume, of course, to depend upon the understanding or contract as to it, which was had between M. Slaughter and W. P. Conway, either tacitly or expressly, on the day it was signed. The transaction of the 20th of July, 1875, is stated by Conway, Gordon & Garnett, in their answer, to have been "precisely similar" to numerous

others that had preceded it for five or six years. These writings had never been treated as passing title, but as papers which might be treated as nullities after awhile and cancelled. No previous one of these writings had been recorded; no previous one had been treated as a deed of conveyance requiring release. All had been treated as writings that might become deeds in the option of the trustee, or of the holders of the notes of M. Slaughter & Son. All of them had been held privately by W. P. Conway, and by him torn up and cancelled whenever he so elected to do.

Now, the very question in this case is, whether the writing of the 20th of July, 1875, signed and acknowledged by M. Slaughter, and delivered by him to W. P. Conway, with the understanding that it was to be cancelled on the payment of the notes which it secured, was intrusted to him in a way that made it a nullity from the beginning, except in case of default; was intrusted to him in a way to pass no title and requiring no release except on default. I say the very question is, whether such writing was a deed, to be taken and treated, as a deed as of the 20th of July, 1875. Was it a deed at all until the 15th of October, 1875, when W. P. Conway elected to treat it as such? I see no reason and know of no precedent which requires a paper, in form a deed, but delivered upon condition that it is not to be treated as a deed passing title, except on the future election of the holder of it, to be held in law as an absolute deed from its date, contrary to the intention of both grantor and grantee in making it.

In the case before me, the intention of both grantor and grantee was, that the deed was not only not to go upon record, to bind creditors, but was not to be a deed passing title, in such a way as to require a release of title, until the grantee should elect so to treat it. I do not think that a paper in form of a deed, which both parties to it agree is not to be treated as a deed except upon a future contingency, can become a deed until the happening of that contingency. I therefore hold that the paper which was signed and acknowledged by Slaughter, and accepted by Conway on the 20th of July, 1875, did not become a deed until Conway, on the 15th of October, elected to treat it as such, and put it upon record. Section 5128 makes void any conveyance which, directly or indirectly, absolutely or conditionally, creates a preference of one creditor over others within two months before the filing of the petition. As the deed in question was void by law as to creditors until the 15th of October, 1875, and, as between parties, was a private, inchoate, defeasible writing until that date, I think that it did not take the character of a deed of conveyance or pass any title until that date; and, therefore, that it falls within the inhibition of section 5128 of the Revised Statutes. I so decide; and will sign a decree in accordance with the prayer of the bill, declaring the deed of Slaughter to Conway void, and setting it aside.

From that decree an appeal was taken, on the hearing of which the chief justice decided as follows:

WAITE, Circuit Justice. The supreme court of the United States decided at its last term, in Sawyer v. Turpin [91 U. S. 114], that if a mortgage to secure a pre-existing debt was executed more than four months before the filing of a petition for the adjudication of the mortgagor a bankrupt, it would be good as against the assignee in bankruptcy when appointed, if recorded before his rights attached but within the four months. This case arose before the act of June 22, 1874 (18 Stat. 180), changing the time of the prohibited preference to a period within two months next preceding the filing of the petition, instead of four, as it originally stood. Upon the principle established in that case, this deed of trust is not invalid under the provision of section 35 of the bankrupt act as amended and enforced at the time of its execution. The deed was delivered to Conway when it was executed, and held by him as security for the notes it described. The testimony is clear upon this point. The failure to record previous deeds of the same character, their surrender for cancellation without a formal reconveyance after payment of the notes, and their acknowledgment before the defendant Garnett as a notary, are all circumstances proper for consideration when determining what the real character of this transaction was; but, in our opinion, they are not sufficient to overcome the positive testimony of all the parties to the effect that the delivery was complete, that the object on both sides was to secure the debts provided for, and that Conway, the trustee, was fully authorized to cause the record to be made whenever he or his beneficiaries thought it desirable to do so. The deed was good as between the parties without record, but until recorded it was void against creditors. Code Va. 1873, p. 897, c. 114. No deed can be admitted to record until proved or acknowledged in the manner provided for. Id. p. 905, § 117. A record without the requisite proof or acknowledgment does not affect creditors. A deed may be acknowledged by the grantor before a notary public, and, upon the certificate of the notary to that effect in proper form, recorded. The form of the certificate in this case is correct, but it is insisted that because Garnett, the notary, was interested as one of the beneficiaries in the trust, he was incompetent in law to receive and certify the acknowledgment. This presents the principal question in the case for our consideration.

The law provides only for the acknowledgment of a deed before a notary public. It does not require, in express terms certainly, that he shall be disinterested. A notary public is an officer provided for by statute. He

must give bond for the faithful performance of his duties. Code Va. 1873, p. 903, c. 116. It has been frequently decided that an acknowledgment before a grantee named in a deed was of no effect. Beaman v. Whitney, 20 Me. 413; Wilson v. Traer, 20 Iowa, 233; Stevens v. Hampton, 46 Mo. 404; Groesbeck v. Seeley, 13 Mich. 345. It has also been held that a party interested in a deed cannot take and certify the acknowledgment of a married woman requiring a privy examination. Withers v. Baird, 7 Watts, 228. The taking of such an acknowledgment is, in some respects, a judicial act, and not ministerial only, but in the case of an ordinary acknowledgment it is purely a ministerial act. Truman v. Lore's Lessee, 14 Ohio St. 144; Lynch v. Livingston, 2 Seld. [6 N. Y.] 434. Upon this principle it was decided in Dussuame v. Burnett, 5 Iowa, 95, that an acknowledgment before one not a grantee named in the deed, but interested in the conveyance, was good. The same distinction was recognized in Stevens v. Hampton, before cited. In October last the judge of the Rockbridge circuit court of Virginia held, in the case of Lady v. Lady [unreported], pending before him, that a grantee named in a deed, though a trustee only, was incompetent to take the acknowledgment of a married woman, the grantor, which required a privy examination. An acknowledgment of that kind, it was said, was of such sanctity as to make it necessary for the officer taking it to be disinterested. The recording acts are intended for the security of titles and the prevention of frauds. They are to be construed liberally to that end. As the record, when made, is constructive notice to all having the legal right to rely upon it for protection, public policy requires that it shall import as near absolute verity as is consistent with a due regard to the rights of the parties interested. A deed acknowledged before one named as grantee, carries upon its face notice of that fact, or, what is equivalent, notice of circumstances sufficient to put a reasonable man upon inquiry. But when the name of the officer taking the acknowledgment does not appear as grantee, or as otherwise interested, no such notice or presumption accompanies the deed or its record. A certificate of acknowledgment is required to perfect a deed for record. The grantor can select such authorized officer for that purpose as he chooses. He has full power to protect himself against frauds by interested parties as certifying officers, for he may refuse to make his acknowledgment before them.

The question we have now before us is not whether as between these parties the certificate can be impeached, but whether it is sufficient in law to authorize the record. It states only facts. The deed was actually acknowledged before a notary public. A recorder receiving it in its present form, and not knowing that the certifying officer was interested in the conveyance, would certainly be justified in putting it on record. The deed itself did not carry notice to him of the supposed disqualification any more than it did to others. It was no part of his duty to detect the secret interest of the certifying officer. If the instrument was apparently sufficient in form, he had nothing to do but to receive and record it. All this the grantor knew, or ought to have known. Every man is held responsible for the necessary consequences of his own voluntary acts. This is a familiar rule, and as old as the principles of common honesty. A grantor acknowledges a deed for the purpose of putting it in a condition for record. The object of the record is to give public notice of what had been done with the property. The public are expected to examine and act upon this evidence. Having voluntarily acknowledged and delivered his deed, the grantor is presumed to have voluntarily consented to its record. He must, therefore, be charged with all the legitimate consequences of such an act. If his deed is found on record, apparently executed according to the forms of law, and without any circumstances of suspicion against it, the plainest principles of equity would hold him estopped from setting up an undisclosed interest of the officer before whom he made his acknowledgment, to defeat his conveyance, as against an innocent purchaser relying upon the record as the evidence of his title. But this defence would be open to him if his acknowledgment were actually void. Void acts are as no acts; they bind no one. Voidable acts are good until avoided, and they cannot be avoided as against rights actually vested under them. As against the grantee, a deed is as much voidable after record as before. So far as he is concerned, the effect of the record is only to change the burden of proof, to some extent, from him to the grantor. After a record duly made, the law presumes that all has been done which is necessary, to give the instrument validity, but this presumption may always be rebutted as against the grantee. And as against third parties, it may be shown that a deed was never signed, sealed, or delivered.

Clearly, therefore, it is against the policy of the recording acts to hold an acknowledgment void because of the secret interest of an officer taking and certifying it. The effort should be to prevent rather than allow hidden defects in the evidence of public records. If voidable only, it is sufficient to authorize the record, if not previously avoided. So, too, as has been seen, it may be avoided at any time after record and before the rights of third parties have attached. This, as it seems to us, furnishes the grantor with all the protection he has the right to demand as against the consequences of his own acts, and at the same time leaves to the recording acts their legitimate power and effect. We conclude, therefore, that the acknowledgment in this case before Garnett was sufficient to au-

thorize the record of the deed to Conway. The acknowledgment may, however, as between these parties, be avoided for fraud if established. But there is no proof of fraud. On the contrary, all parties agree that the acknowledgment was freely and fairly made in the belief that it was in all respects sufficient to vest the title in the trustee for the purposes specified.

The decree of the district court annulling the deed is therefore reversed; but inasmuch as the trustee named in the deed is interested in the debt secured by the trust, the sale advertised by him should be enjoined, and another trustee appointed to execute the trust in that behalf. A decree may be prepared in accordance with this opinion.