## CONVEYANCES.

[Circuit Court of Lucas County.]

WILLIAM H. A. READ, ASSIGNEE, ETC., v. TOLEDO LOAN CO. ET AL.*

Decided, October 19, 1901.

*Conveyance—Instrument Witnessed and Acknowledged by Interested Parties—Acknowledgment Before a Notary a Ministerial Act— Grantor Estopped from Claiming Invalidity, When.*

1. A conveyance is not rendered invalid in Ohio by reason of the fact that the witnesses thereto and the notary who took the acknowledgment were interested parties to the extent of being stockholders in the grantee company.

2. An attestation by a notary public is not a judicial but a ministerial act in this state.

3. In view of the custom for the grantor to prepare his own deed, call the witnesses and acknowledge its execution before it passes into the possession of the grantee, he is estopped from objecting to a witness in whom he has thus reposed confidence in the witnessing of his own act.

HULL, J.; PARKER, J., and HAYNES, J., concur.

This case involves the question as to whether an interested party may witness a mortgage and also act as a notary public in taking the acknowledgment of the grantor.

The action below was brought originally in the probate court by the assignee, by filing a petition to sell real estate, making the Toledo Loan Company and others parties defendant. The Toledo Loan Company filed its answer and cross-petition setting up a mortgage given by Cary D. Lindsay, the assignor. The assignee replied, denying the validity of that mortgage,

---

*Affirmed by the Supreme Court (68 Ohio State, 280).

alleging that it had not been acknowledged or witnessed according to law.   The mortgage was sustained in the probate court, and upon appeal a like judgment was entered in the common pleas court, and we have here a finding of facts by the court of common pleas.   In paragraphs 4, 5 and 6 the finding of facts is this:

"4.   That prior to and upon February 19, 1896, said assignor, Cary D. Lindsay, was a member of said The Toledo Loan Co. and on the said date subscribed for ten shares of the capital stock of said company; that thereupon, on the representation of said Cary D. Lindsay to said company, and upon agreement between said Cary D. Lindsay and said company that said loan should become and be secured by a first lien upon said lots, numbers 116 and 117, in Shaw's Monroe street addition to Toledo, Ohio, said The Toledo Loan Company, on February 19, 1896, loaned and advanced to said Cary D. Lindsay the sum of $4,800 of and from the moneys theretofore raised by said company for said purpose of loaning to its members, said Cary D. Lindsay agreeing to repay said loan with interest in weekly installments, in accordance with the constitution and by-laws of said company; that in pursuance with said representation and agreement, and to secure the payment of said money so loaned, with interest, and simultaneously with the loaning thereof, said Cary D. Lindsay executed, acknowledged and delivered to said defendant, The Toledo Loan Company, his certain mortgage for said sum of $4,800 upon said lots, Nos. 116 and 117, in Shaw's Monroe street addition aforesaid.

"5.   That said mortgage was executed by said Cary D. Lindsay in the presence of Eva M. Ely and Grant Williams, and was acknowledged by said Cary D. Lindsay before Grant Williams, a notary public within and for Lucas county, Ohio; that at the time of the execution and acknowledgment of said mortgage said Cary D. Lindsay was a stockholder in said The Toledo Loan Company, and Eva M. Ely and Grant Williams were each owners of two shares of the stock of said company, and said Eva M. Ely and Grant Williams were not otherwise related to said The Toledo Loan Company or in any wise employed by it; and said Cary D. Lindsay then knew that said witnesses and notary, respectively, were stockholders in said company.

"6.   That Eva M. Ely and Grant Williams each testified upon the hearing of this case that they acted as witnesses and notary, respectively, of said mortgage, at the request of said Cary D. Lindsay, and Cary D. Lindsay testified that he did not request

either of them to act as witnesses, and that he did not request Grant Williams to act as a notary.''

This last does not amount to a finding of fact as appears from its reading, but is a statement by the court of what the witnesses testified to. So that it appears that this mortgage given by Cary D. Lindsay to the loan company was witnessed by two persons, both of whom were stockholders to the amount of two shares in the loan company; that one of these stockholders who acted as a witness also took Lindsay's acknowledgment as a notary public.

It is claimed by the plaintiff in error that these persons were incompetent to act as witnesses, and that Williams was incompetent, by reason of his interest, to act as a notary public in taking the acknowledgment.

The case was very fully argued, and a very large number of authorities collected by counsel on both sides and cited to the court—authorities not only from this state, but from nearly every state in the Union, bearing upon this question. The briefs were very full, and have been very helpful to the court. However, in this opinion we shall not be able to review or cite any great number of these authorities.

The statute with reference to this question in this state is Section 4106, Revised Statutes, which provides as follows:

''A * * * mortgage * * * of any estate or interest in real property shall be signed by the * * * mortgagor * * * and such signing shall be acknowledged by the * * * mortgagor * * * in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation, and such signing shall also be acknowledged by the * * * mortgagor * * * before a judge of a court of record in this state, or a clerk thereof, a county auditor, county surveyor, notary public, mayor or justice of the peace, who shall certify the acknowledgment on the same sheet on which the instrument is written or printed, and subscribe his name thereto.''

The question is whether, under the provisions of this statute, a person may act as a witness to a conveyance who is interested to the extent of being a stockholder in the grantee, and whether

such person may act as a notary public in taking the acknowledgment.

A number of cases from other states were cited by counsel for plaintiff in error, where it has been held that persons can not act either as witnesses or notaries public, upon the ground of their interest in the transaction, in the conveyance, or the property itself. In some of those states, and perhaps nearly all of them, it is held by the courts that the act of a notary public in taking an acknowledgment is a judicial act, and the courts hold that under the rule that a judge may not act in his own case or in a case in which he is in any wise interested, a notary public, as he acts judicially, can not act in any matter in which he has any interest. It is the settled law of this state, however, under the decisions of our Supreme Court, that the action of a notary public, in taking an acknowledgment, is not a judicial act, but a ministerial one, and manifestly, therefore, the reasoning of many of the decisions in other states is not applicable to the statute of this state.

It is to be observed from the reading of the statute itself that the witnesses are not required to be disinterested. The language of the statute is that it "shall be signed by the grantor, mortgagor, or lessor," and "in the presence of two witnesses, who shall attest the signing, and subscribe their names to the attestation," and then it further provides that such signing shall be acknowledged by the grantor, mortgagor, or lessor, before a notary public or some other officer named. The statute itself, then, does not provide that either the witnesses or the notary public shall be disinterested. There are statutes relating to notaries public which provide that they shall be disinterested in acting in certain matters, as in the taking of depositions, in which the statute provides that the notary public shall be some person who is not interested in the case.

So, then, the statute itself containing no express provision upon this subject, the question is, whether the policy of the law, or the law of this state, as established by the courts, requires the witnesses to a conveyance, or the notary public taking the acknowledgment to be disinterested persons. The pur-

pose and object of witnesses to a mortgage or other conveyance, of course, is plain; that there may be on record in a matter as important as the conveyance of real estate the names of two persons, who certify that they saw the grantor sign the instrument, or heard him acknowledge the same. The purpose of the acknowledgment is to require a still further and more solemn attestation of his signature to the instrument, that he acknowledge it before an officer, who shall certify formally that he acknowledged the signature before him; all these provisions being for the purpose of the protection of titles, and of affording testimony and witnesses to the conveyance of real estate, which, in the times out of which this law grew, was regarded as a matter of great solemnity and importance.

In practice the grantor himself usually selects his own witnesses and the notary public before whom he desires to acknowledge his deed or mortgage. Until the mortgage has been signed, attested, and acknowledged, or the deed, if it be such a conveyance, it rests in the hands of the grantor. It is still in his possession and under his control. By whom it shall be witnessed and before whom it shall be acknowledged is a matter, ordinarily, for him to determine.

In this case it does not appear from the statement of facts that the grantor requested these persons to act as witnesses or notary public; it simply appears that he knew they were stockholders in the corporation. But in a case where the grantor had in fact requested a person or persons to act as witnesses or as a notary public, knowing that such persons were interested parties, were interested in the conveyance, the grantor himself selecting his witnesses from choice, it would seem that under such circumstances he ought to be estopped from complaining that the witnesses were interested, and therefore that his conveyance was invalid.

The question here is one of great importance, for if it be true that it invalidates a conveyance if a witness or the notary public is interested in the conveyance, to the extent of being a stockholder, it might affect, and doubtless would, the titles of a great many pieces of property, and in many cases it would

be impossible to determine from an examination of the records in the recorder's office whether a conveyance was valid or invalid, for it would not, in many cases, as in this case, appear upon the face of the instrument that either of the witnesses or the notary public was interested.  In this case the grantee is The Toledo Loan Company.  There is nothing in the record to show that either one of these witnesses has any interest in The Toledo Loan Company, or would be interested in a conveyance to the corporation.  These persons sustain no relation to the company except that of stockholders.  From that alone the plaintiff in error claims that the mortgage is void.  His claim was well and succinctly stated in the brief of counsel, as follows:

"1.  That inasmuch as Eva M. Ely and Grant Williams were both stockholders of the defendant company, the mortgage given to it by Cary D. Lindsay was never witnessed.

"2.  That inasmuch as Grant Williams, the notary before whom said mortgage purports to have been acknowledged by Cary D. Lindsay, was a stockholder in said company, that said mortgage was never duly acknowledged.

"3.  That never having been acknowledged and never having been witnessed as to its signature, said mortgage was not entitled to record in Lucas county, and its recordation is a nullity.

"4.  That the plaintiff holds the legal title to said real estate free from all incumbrances or liens growing out of said mortgage."

This question has been discussed in some of the text books on the law of real estate, and some phases of it, at least, by our own Supreme Court, and whatever the law may be in other states, we must follow the decisions of our Supreme Court.  An early case, in which the question of the qualification of a witness to a conveyance arose, is that of *Johnson* v. *Turner,* 7 Ohio (pt. 2), 216, where it is held that "A deed conveying lands is not to be impeached by showing that one of the subscribing witnesses is incompetent to testify."  We find this in the statement of facts in the case:

"In this case an agreed statement of facts is submitted on which the questions to be decided arise.  Walter Turner was indebted to the Bank of Zanesville in the amount stated in the

trust deed under which the plaintiffs claimed, and on the application of C. B. Goddard, Esq., the attorney for the bank, executed the deed which was prepared and signed by said Goddard, as one of the subscribing witnesses, he being a stockholder in the corporation.''

So that the facts in this case are similar to the facts in the case before us; the witness, who was the attorney, was also a stockholder in the bank. The Supreme Court held that it did not affect the validity of the deed. They say on page 218:

''But is not this deed in conformity with the statute? This is admitted, in all respects, excepting that General Goddard was *interested* in the corporation for whose benefit it was made, when he subscribed it as a witness, and it was executed by Turner. If interested, however small that interest may be, the general rule of law excludes the witness from giving testimony. It distrusts him and declares him disqualified. But if it be necessary to sustain this deed, to call this subscribing witness, would the rule which excludes an interested witness apply? The party whose right it is to object on the ground of interest may waive that objection, and the witness is then competent. He may call him himself, and he is competent; because if he testify for himself, who has the right to object? His evidence is against his own interest, and the more worthy of credence; and if called by the other side, whose claim it is his interest to support, and the objection of interest is waived, the law admits him to testify.''

The objection to Goddard, the witness in this case, seems to have been on the ground that he was an interested party and would not be competent to testify if necessary to call him in a court as a witness. That objection under the law as it is now would not be good. But the Supreme Court say on the same page, in discussing the case:

''In England the grantee must prepare the conveyance and present it to the grantor for execution. We know of no such rule here. The grantor prepares his own deed. He calls his witnesses; they are selected by himself. He must then acknowledge its execution, and not until thus acknowledged does he part with its possession by a delivery to the grantee. Every act, therefore, is the act of the grantor while the deed remains in his possession, and the first act of the grantee is the accept-

ance when finally delivered to him. The grantor, then, should not, it appears to us, be permitted to object to a witness selected by himself, and in whose intregity he had reposed confidence, to bear witness to his own acts. But aside from this course of reasoning is this deed invalid? The statute, Volume 31, 346, Section 1, requires the deed to be executed '*in the presence of two witnesses, who shall attest such signing and sealing and and subscribe their names to such attestation.*' Unless the express provision of this statute, or its plain inference, lead to the conclusion that the witnesses to a deed must be *credible* and *competent* to prove its execution at the time of their attestation, and that such was the intention of the Legislature, reluctantly, indeed, would this court adopt such an opinion. If such be the law, it is time to look around us and ascertain by whom our deeds bear witness. Who ever instituted an inquiry when a witness was called to attest a deed, whether he was *competent* or *incompetent to testify in a court of justice;* or whether persons might not subsequently be found who would impeach him for the want of character for truth,'' etc.

They say at the bottom of page 219:

''The counsel for the plaintiffs have furnished us with the case of *Smith* v. *Chamberlin,* 2 N. H., 440. The opinion is given by the Chief Justice, Richardson, and appears to us fully to sustain us in our opinion of the law of this case, as to the validity of the trust deed. The opinion is founded on a statute of New Hampshire, of February 10, 1791 (1 N. H. Laws, 191), which contains this provision: 'That all deeds or other conveyances of any lands, tenements, or hereditaments, lying in this state, signed and sealed by the party granting the same, having good and lawful authority thereunto, and signed by *two or more witnesses,* and acknowledged by such grantor or grantors before a justice of the peace, and recorded at length in the registry of deeds in the county where such lands,' etc., 'lie, shall be valid to pass the same without any other act or ceremony in law whatever. On this section of the statute the chief justice says: 'In the clause now under consideration, there is nothing which indicates an intention in the Legislature to require that witnesses to a deed should be competent to prove its execution on redirect examination favorable to the plaintiff on this point at the time they subscribe it as witnesses. We have been much at a loss to conjecture why two witnesses were in this instance required by the statute. Surely they were not intended to be placed round a grantor for the same reasons they were placed

round a testator. The most plausible conjecture is, that it was intended to render the proof of the instrument more certain. If this were the object, there is good reason to suppose that the word witness, was, in this instance, used in the simple sense of spectators of the transaction. A witness competent at the time might in one hour become incompetent; and a witness incompetent at the time might in one hour become competent. All that could be done with this view, by the Legislature, was to require that deeds should be executed in the *presence of two or more persons* who should put their names to the deeds as witnesses. It would have been idle to make the validity of the deed depend upon the incompetency of the witnesses, at a time when they could not be wanted to prove the execution of the deed.' "

It seems to us that this decision of the Supreme Court settles the question for us, that a witness to a conveyance may be an interested person, and that although he may be interested to the extent of being a stockholder, this does not invalidate the deed. In 2 Jones Law of Real Prop., Section 1126, the author arrives at the conclusion that that is the general law of the land. And his conclusions as to the notary are, that if there is nothing on the face of the deed to notify purchasers that the notary is an interested person, it will not affect the validity of the deed; and he says:

"An interest under a deed not apparent on its face does not disqualify an officer to take and certify an ordinary acknowledgment. Thus, if he is one of the beneficiaries in a deed of trust, he may take the grantor's acknowledgment, when his interest under the deed does not appear on the face of it. The fact that he acted as the agent of the mortgagor in obtaining the money does not disqualify him to take the mortgagor's acknowledgment.

"The chief use of an acknowledgment, as already noticed, is to perfect the deed for record. The grantor can select such authorized officer before whom to acknowledge his deed as he chooses. He may refuse to make his acknowledgment before an interested officer. Having voluntarily acknowledged the deed, the grantor is presumed to have voluntarily consented to its record. If his deed is found on record, apparently executed according to the forms of law, and without any circumstances of suspicion against it, the plainest principle of equity would hold him estopped from setting up an undisclosed interest of the

officer before whom he made his acknowledgment, to defeat his conveyance, as against an innocent purchaser relying upon the record as to the evidence of his title.''

These remarks will apply to a witness as well as a notary, and perhaps with more force.

In *National Bank* v. *Conway,* 17 Fed. Cas., 1202, it was held by the United States Circuit Court that the fact that the notary was interested would not invalidate a deed. Chief-Justice Waite, deciding this case, among other things, said:

''It has been frequently denied that an acknowledgment before a grantee named in a deed was of no effect. * * * It has also been held that a party interested in a deed can not take and certify the acknowledgment of a married woman requiring a privy examination. * * * The taking of such an acknowledgment is, in some respect, a judicial act, and not ministerial only, but in the case of an ordinary acknowledgment it is purely a ministerial act. * * * Upon this principle it was decided in *Dussuane* v. *Burnett,* 5 Ia., 95, that an acknowledgment before one not a grantee named in the deed, but interested in the conveyance, was good. The same distinction was recognized in *Stevens* v. *Hampton,* before cited.''

And the chief-justice said further along in the opinion:

''The recording acts are intended for the security of titles and the prevention of frauds. They are to be construed liberally to that end. As the record, when made, is constructive notice to all having the legal right to rely upon it for protection, public policy requires that it shall import as near absolute verity as is consistent with a due regard to the rights of the parties interested. A deed acknowledged before one named as grantee, carries upon its face notice of that fact, or, what is equivalent, notice of circumstances sufficient to put a reasonable man upon inquiry. But when the name of the officer taking the acknowledgment does not appear as grantee, or as otherwise interested, no such notice or presumption accompanies the deed or its record. A certificate of acknowledgment is required to perfect a deed for record. The grantor can select such authorized officer for that purpose as he chooses. He has full power to protect himself against frauds by interested parties as certifying officers, for he may refuse to make his acknowledgment before them.''

Under the law of this state, as laid down by the Supreme Court, it is not clear that it would be held that the taking of an

acknowledgment of a married woman was a judicial act. We are of the opinion that it would not be. The comparatively recent case of *Amick* v. *Woodworth*, 58 Ohio St., 86, decides that a grantee in an instrument can not take the acknowledgment, and it is urged by counsel for plaintiff in error that this case modifies the decision (*Johnson* v. *Turner, supra*). The first paragraph of the syllabus is this:

"A grantee in an instrument for the conveyance or incumbrance of real property is disqualified, on grounds of public policy, to be an attesting witness to its execution, or to act in an official character in taking and certifying the acknowledgment of the grantor."

The court discusses the question fully in the opinion, and on the ground of public policy holds that a grantee in an instrument is disqualified from taking an acknowledgment. The court argues, page 100, and it is clearly true, that to permit the grantee in an instrument to "attest as a witness the execution of an instrument made to himself, or take its acknowledgment as an officer, where its attestation and acknowledgment are necessary to give it validity, would be against public policy and would practically defeat the real purpose of the law, which is to prevent the perpetration of frauds on the grantors, and afford reasonable assurance to those who deal with or on the faith of such instruments that they are genuine and represent *bona fide* transactions." They say on page 101 of the opinion:

"It is probably unnecessary to notice that this question was not involved in *Johnson* v. *Turner*, 7 Ohio (pt. 2), and that case is unaffected."

So it seems to us that the Supreme Court intend here, and do expressly state, that the doctrine in *Johnson* v. *Turner, supra*, is not to be disturbed, and is not affected by this decision, which was rendered in 1898.

A case decided by the District Court of Mahoning County in 1881 is decidedly in point here. It is a very brief decision in *Horton* v. *Columbian Building & Loan Co.*, 8 C. C., 169, heard before Judges Sherman, Myer and Woodbury, and is as follows:

"The plaintiff in error executed and delivered a mortgage to the defendant in error to secure a loan made by the society to him, one of its stockholders.

"The mortgage was acknowledged before Owen O'Donnell, who at the time of taking the same was a stockholder in, and secretary and treasurer of the defendant in error, The Columbian Building & Loan Society, a corporation. In the suit in foreclosure brought by the society upon the mortgage, the defense was made that the mortgage was not properly executed for the reason that the notary public, O'Donnell, being a stockholder and officer of the society, the mortgagee occupied such a position as disqualified him from acting in his official capacity as notary.

"*Held:* That the official connection of O'Donnell with the society did not disqualify him from acting in his notarial capacity in taking the acknowledgment to the mortgage to the corporation of which he was an officer and stockholder."

In that case the facts were stronger than in the one at bar. The notary was not only a stockholder but an officer of the corporation. This decision, through brief, is to the point, and it is significant that it has stood in this state now for twenty years without criticism, so far as we know by the Supreme Court or any other court of the state. The court which decided the case was composed of able judges, and their decision is entitled to great respect, and we give it such respect.

In this state the act of the notary is not judicial, but ministerial, and it seems to us, both upon reason and authority, that it is not sufficient to invalidate a conveyance in Ohio that the witnesses or the notary are stockholders in a corporation to which the conveyance is made. To hold that this was sufficient would unsettle titles, and as the Supreme Court say in *Johnson* v. *Turner, supra,* we might well examine our conveyances, and look about us to see who were the witnesses that had attested them. We think there is every reason to hold against that claim for the purpose of security of titles. And the decisions of the courts of this state, as we understand them, are against the contention of the plaintiff in error.

For these reasons the judgment of the court of common pleas will be affirmed.

*W. H. A. Read,* for plaintiff in error.

*King & Tracy,* for defendant loan company.