232

ANNA S. TIBBALS and JOHN J. SPRIGGS,
*Plaintiffs and Appellants,*

vs.

THE BOARD OF THE COUNTY COMMISSIONERS
of the County of Fremont, State of Wyoming, and
J. L. GARDNER, HENRY LOCKARD and ARTHUR
FAULKNER, as the Individual Members of said
Board, and J. F. SHIPTON, as County Treasurer
of said Fremont County, Wyoming,
*Defendants and Respondents.*

(No. 2670; August 2nd, 1955; 286 Pac. (2d) 598)

Heard before Riner, Chief Justice; Blume, Justice; and Parker, District Judge.

For the plaintiffs and appellants, the cause was submitted upon the brief of John J. Spriggs, Sr., and John J. Spriggs, Jr., both of Lander, Wyoming, and oral argument by John J. Spriggs, Sr.

For the defendants and respondents, the cause was submitted upon the brief of Smith and Nicholas of Lander, Wyoming, and oral argument by W. J. Nicholas.

## OPINION

PARKER, District Judge.

This case, number 2670 herein (number 6485 below), was consolidated for trial with case number 2671 in the Supreme Court (number 5200 below) and is an appeal from the judgment denying plaintiffs relief in a suit to quiet title on mining claims and for damages.

Although the pleadings and evidence contain reference to other matters, the salient and pertinent facts relating to the case, as this court views them, are: That plaintiffs, prior to 1932, asserted certain rights in the mineral claims in question, which on the county records of Fremont County stood in the name of the Federal Gold Mining Company. On December 7, 1932, J. J. Spriggs, who apparently was interested in the

property both as counsel for Tibbals and otherwise, paid the county treasurer of Fremont County $1,569.69 for Certificates of Purchase on the said mining claims previously sold to Fremont County for taxes levied in the years 1928 and 1929. Thereafter, the taxes for the years succeeding 1932 were unpaid and the property was again up for sale in 1933. J. J. Spriggs and Mrs. Tibbals, according to the evidence, made some inquiries of the county treasurer of Fremont County regarding the property and the taxes thereon. The evidence is somewhat indefinite as to the nature of the discussion between plaintiffs and the county treasurer, but it is clear that the county treasurer refused to issue a tax deed to J. J. Spriggs upon submission by Spriggs to the county treasurer of the Certificates of Purchase and newspaper notices regarding the application for tax deed thereunder. It also appears, although somewhat indirectly, that there was a refusal on the part of the county treasurer to accept the 1933 taxes on the property, and the county treasurer in his conversation gave the impression that a previous injunction issued by the District Court of Fremont County precluded him from dealing with plaintiffs regarding the property.

Many years have elapsed since that time; and J. J. Spriggs has since then secured a quit-claim deed to the mining claims from a party purportedly owning them previously, and now claims the property by virtue of circumstances other than the claims of ownership of Tibbals and Spriggs on December 7, 1932. However, as we view it, the disposition of this case depends primarily on two things: (1) Was the 1933 assessment and sale of the mining claims prima facie valid and legal, or invalid and void; and (2) If the 1933 assessment and sale was invalid, did the plaintiffs in 1933 and subsequently have (a) a right to protect themselves by paying the taxes on the property, or (b) a sufficient interest in the property and standing in court

to permit the bringing of this action?

In answer to the first question, it appears that the 1933 assessment was invalid for a number of reasons, discussion of some of which is unnecessary in this holding. Suffice to say that the property was not assessed in the name of the record owner. Section 32-510, Wyoming Compiled Statutes, 1945, provides inter alia, that:

"On the last day of January in each year, the board of county commissioners shall furnish each assessor with suitable assessment rolls and schedules properly ruled and headed, in which to enter the following items: First—The name of the individual, corporation, company, society, partnership, or firm, to whom any property shall be taxable   *   *   *   "

This statute was first interpreted in 1881 in the case of Hecht v. Boughton, 2 Wyo. 385, which at some length and with considerable force, stated the proposition that if the assessment was not made in the name of the owner, the resultant proceedings were void. Two other Wyoming cases have discussed the proposition, now taken to be unquestioned. In Electrolytic Copper Co. v. Rambler Consol. Mines Corp., 34 Wyo. 304, 310, 243 P. 126, 127, the court mentioned the Hecht case; and after holding that tax sale was void for want of sufficient description of the property as required by statute, the court said:

"The same section provides also that the assessment roll shall specify the name of the individual or corporation to whom any property shall be taxable, which means the owner."

In the case of Corthell v. Board of Com'rs. of Albany County, 44 Wyo. 71, 77, 8 P. 2d 812, 814, the court said: "   *   *   *   ordinarily property is taxable only to the person who is the owner thereof on the date to which assessments for the current year are referable."

As to the second point, any person who has any rights of ownership in property stands in a position to require the acceptance by the public taxing and collecting officials of the taxes on the property, and a lien of the government for taxes may not issue against the property to the detriment of a person offering to pay such taxes. "It is elementary that any person other than the owner can pay a tax on a particular piece of property where his rights would be injuriously affected by a sale of the property for taxes. The law, in carrying out its policy of prompt payment of taxes, encourages payment thereof by anyone whose property may be ultimately liable for the tax   *   *   *" 51 Am. Jur., Taxation § 946, citing Richey v. Moor, 112 Tex. 493, 249 S.W. 172. This right, although not discussed directly, was recognized by this court in Wyoming Building & Loan Ass'n. v. Mills Const. Co., 38 Wyo. 515, 524, 269 P. 45, 48, wherein the court, in discussing subrogation, says that:

"*   *   * the rule is universal that one who has an interest in property by lien or otherwise, in making payment of prior liens, including taxes, is not a mere volunteer, and that he will be entitled, upon payment of a superior lien in order to protect his own lien, to be subrogated to the rights of the superior lienholder."

There has been much discussion, both by court and counsel, of the fact that the situation relating to the ownership and control of the mineral claims is very involved and that the existence of certain collateral suits, together with the previous history of the transactions prevent any judgment in this case until all other matters be clarified. It is true that facts relating to the previous history of the claims delineable in collateral suits may have some bearing on the final outcome of the entire litigation and may affect the ultimate ownership and rights of the parties in and to the properties. However, we think that, under the authorities

above-stated, this case settles itself without regard to such peripheral matters. In the first place, as relates to the 1938 tax deed, the 1933 assessment is invalid and the sale is void. Plaintiffs had a right to pay the taxes and protect themselves from a lien; and even though they did not then previously exercise such right, they are now requesting the right to make such payment, and their request should be granted. Accordingly, plaintiffs' title is quieted as against any rights existing or purporting to exist by virtue of tax deed number 178,080 issued by Charles T. Cole, county treasurer, to Fremont County, Wyoming, dated June 12, 1938. This does not, by any stretch of the imagination, mean that plaintiffs' title is good and valid in all respects but merely that plaintiffs' title is superior to any emanating from the 1938 deed.

Plaintiffs, having proved no damages, are entitled to no judgment on that phase of their prayer. The judgment is reversed on the points thus mentioned and, except as so stated, shall be in force and effect.

*Reversed but no damages allowed.*

RINER, C. J., and BLUME, J. concur.