Ethel S. MORAD, Appellant
(Defendant below),

Natrona County, Wyoming, et al.,
(Defendants below),

v.

W. H. BROWN et al., Appellees
(Plaintiffs below).

W. H. BROWN et al., Appellants
(Plaintiffs below),

v.

Ethel S. MORAD, Appellee
(Defendant below),

Natrona County, Wyoming, et al.,
(Defendants below).

Nos. 4535, 4536.

Supreme Court of Wyoming.

April 30, 1976.

Rehearing Denied June 18, 1976.

**314**

David N. Hitchcock, Laramie, for Ethel S. Morad, appellant in No. 4535, appellee in No. 4536.

B. J. Baker, of Brown, Drew, Apostolos, Barton & Massey, Casper, for appellees W. H. Brown, H. M. Pursel, and Margaret L. Pursel, No. 4535; and B. J. Baker and George M. Apostolos, of Brown, Drew, Apostolos, Barton & Massey, Casper, for appellants W. H. Brown, H. M. Pursel, and Margaret L. Pursel, No. 4536.

Before McCLINTOCK, RAPER, THOMAS and ROSE, JJ., and ARMSTRONG, D. J., Retired.

ARMSTRONG, District Judge, Retired.

This action arose when W. H. Brown filed a suit to quiet title to certain lots and tracts in Red Butte Village subdivision No. 2, being 19.89 acres in the W2, S.E.¼ of Sec. 22 Township 33 North, Range 80 West of the 6th PM, Natrona County, Wyoming, under § 1–958, W.S.1957, against twelve named defendants who claimed an interest in certain of the lots and tracts by virtue of tax titles acquired from the county.

The trial court quieted the title in Brown against all of the defendants except appellant Morad who was the only party in possession of her tract. None of the other defendants appealed and the record implies that they recovered their cost of the tax titles from the County without contest.

The Pursels joined in the lawsuit as plaintiffs to recover $1,000 from Natrona County which they had paid the County for a tax title to certain of the lots and tracts involved. The County again stipulated that they would be reimbursed if the tax sales were adjudicated invalid.

Brown was not in possession of the Morad tract, and since possession is required to bring an action to quiet title (§ 1–958, W.S.1957) he moved to amend the complaint to conform to the evidence to state a cause of action in ejectment, § 1–959, W.S.1957. The trial court denied the motion, and he appealed, in docket No. 4536, from that part of the trial judgment which dismissed his complaint against Morad.

Morad appealed, in docket No. 4535, from the trial court's dismissal of her counter-claim to quiet the title to her tract "J". Her grounds of appeal consist of: (1) the trial court's lack of jurisdiction because Brown was not in possession of tract "J" and possession is a jurisdictional prerequisite to bringing his action to quiet title; (2) Brown was estopped from questioning Morad's title; and (3) Brown was guilty of laches.

This court affirms the trial court's findings and conclusions:

(1) That the lots and tracts had been erroneously assessed in the name of a stranger to the title and that the resultant tax sales were void and conferred no valid title on the tax-sale purchasers including Morad. *McCarthy v. Union Pacific Ry. Co.*, 58 Wyo. 308, 131 P.2d 326 (1942); and *Tibbals v. Board of County Commissioners*, 74 Wyo. 232, 286 P.2d 598 (1955);

(2) That the record legal title to all the lots and tracts, including appellant Morad's, was in the name of appellee Brown, and under the Uniform Declaratory Judgment Act the court correctly quieted the title against the other defendants. *Ohio Oil Company v. Wyoming Agency*, 63 Wyo. 187, 179 P.2d 773, 779 (1947);

(3) That appellant Morad was in possession and had made improvements on her tract, but not having legal title and

claiming under a void tax title her counterclaim to quiet her title was properly dismissed.

This court, however, reverses the trial court's decision which dismisses appellee Brown's complaint against Morad, for reasons discussed later in this opinion.

With respect to appellant Morad's contentions on appeal:

### 1. *Jurisdiction*

■ Wyoming having adopted the statute on quieting title (§ 1–958, W.S.1957) from the state of Ohio in 1886, that state's cases are pertinent on the requirement of possession to maintain such an action. The case relied on by appellant Morad with greatest emphasis is *Lichtenberger v. Milligan,* 63 Ohio App. 107, 25 N.E.2d 357 (1939). The court held there that plaintiff was not in possession and therefore could not invoke chancery jurisdiction. But appellant Morad failed to cite *McBride v. Murphy,* 111 Ohio St. 443, 145 N.E. 855, 856 (1924), which, incidentally, was quoted in *Lichtenberger.* It was held there:

"The petition of plaintiffs below alleged they were out of possession. However, the cross-petition of the defendant was a bill quia timet, or what is known to our Code as an action to quiet title. The cross-petition alleged possession in the answering defendant, and asserted that the plaintiffs claimed title to and an interest in the premises in question. In the case developed by the pleadings the claim of title made by the plaintiffs was a cloud upon the title of the defendant, which it had a right to remove. If, under the former decisions of this court, the plaintiffs, because out of possession, could not have their remedy in chancery, but were relegated to an action in ejectment, it appears nevertheless that, if the cross-petitioning defendant interposes a case, chancery in character, touching the subject-matter contained in the petition, and relief is granted thereon, the cause becomes one in chancery."

The relief granted defendant in that case was money due for oil and gas, but the title to the lease was established in the plaintiff.

To the same effect is *Kiriakis v. Fountas,* 109 Ohio St. 553, 143 N.E. 129 (1924), where it is said:

"This cross-petition is clearly equitable, and establishes equitable jurisdiction. Where a court of equity obtains jurisdiction of an action, it will retain it and administer full relief, both legal and equitable, so far as it pertains to the same transactions or subject-matter. Frank v. Davis, 135 N.Y. 275, 31 N.E. 1100, 17 L.R.A. 306. Under such circumstances a court of equity may go on to complete adjudication, even establishing legal rights and granting legal remedies which would otherwise be beyond the scope of its authority. *Johnston & Grommett Bros. v. Bunn & Monteiro,* 108 Va. 490, 62 S.E. 341, 19 L.R.A.(N.S.) 1064. The same rule is laid down in Ohio. Gantz v. Gease, Gdn., 82 Ohio St. 34, 91 N.E. 872." See 74 C.J.S. Quieting Title § 95, pp. 144–146.

See also *Kukla v. Gonski,* 40 Ohio App. 575, 179 N.E. 206, 207 (1931) ; *McCormick v. McCormick,* 124 Ohio St. 440, 179 N.E. 286 (1931) ; and *Sellman v. Schaaf,* 26 Ohio App.2d 35, 269 N.E.2d 60, 64 (1971), where it is said:

" * * * An action at law for trespass (predicated upon possession) or ejectment (predicated on being out of possession) would be of doubtful value and in any event could result in continuing repeated actions and in a multiplicity of suits; it would therefore appear that the remedy at law would be inadequate and that the exercise of equity powers to quiet title would be proper."

■ The appellant Morad not having filed a timely motion prior to having filed a suit to quiet title in her counter-claim, the court had jurisdiction and properly held that appellee had legal title and she had no title, but that she had placed permanent improvements on the property. Her testi-

mony placed the value of the improvement in the vicinity of $10,000, but no further testimony was elicited with respect to a claim as an occupying claimant (§ 1–963 et seq., W.S.1957). See Annot., 24 A.L.R.2d 11 for measure and items of recovery for such improvements. *Walther v. Steward*, 54 Wyo. 160, 88 P.2d 475 (1939), and 74 C.J.S. Quieting Title § 102, p. 152 et seq.

In addition to the jurisdiction afforded by the counter-claim, the court could and did exercise jurisdiction under the Uniform Declaratory Judgment Act (§ 1–1051, W.S. 1957) to settle and to afford relief from uncertainty and insecurity with respect to rights. *Ohio Oil Co. v. Wyoming Agency*, supra, 179 P.2d at 780, and cases cited there.

## 2. *Estoppel*

When appellee Brown acquired title in 1959 to the tract in question he contracted with the grantor-company to resell parcels of 2½ acres or more to the grantor; and, in the event the company desired to subdivide the tract or part thereof, Brown "as the owner of said property of record *to the extent it has not been transferred to* [the grantor-company], shall join in the execution and acknowledgment of each such plat." (Emphasis added) In 1960 the company filed a plat without owning the entire subdivision and without Brown's acknowledgment. A month later Brown and the company agreed in writing to impose protective covenants on the lots, as described in the plat, and attested that "[a]s of this date the parties hereto are the owners, and the owners of record, of all lots" etc., in the subdivision.

■ Appellant would have us construe that agreement as to make Brown and the company joint owners. Thus the assessor would be justified in assessing the property in the company name and in the end enable the County to convey to appellant a valid tax title. At the time that agreement was executed both Brown and the company owned lots individually in the subdivision.

Needless to say, an agreement for protective covenants is not a conveyance of any kind of title. Further, a conversion of the words used in such agreement to create a joint ownership is wholly without merit. The plat, even when possibly ratified by Brown, conveyed no title to the company or anyone else. A dedication conveys an easement in the people to use the streets and alleys. Section 34–115, W.S.1957; *Payne v. City of Laramie*, Wyo., 398 P.2d 557 (1965); *Gay Johnson's Wyoming Automotive Service Co., Inc. v. City of Cheyenne*, Wyo., 367 P.2d 787 (1961).

■■ In addition to the above, appellant contends that appellee's possession and a lien, prepared by a lawyer in Brown's firm for a creditor of the Morads, are other grounds for estopping Brown from "disparaging" Morad's title. Those contentions, as the others, change the situation not a whit. In the first place, there is no evidence that appellee Brown knew the Morads were in possession or that a lien was filed. But more importantly, for estoppel to apply, words or conduct must induce another who was ignorant of the true facts and who had a right to rely on such words or conduct to believe and act upon them, thereby to his injury. To claim estoppel he must have lacked knowledge and the means of knowledge of the truth as to those facts.

"* * * '"[O]rdinarily the courts refuse to give effect to an estoppel where the parties were equally well informed as to the essential facts or where the means of knowledge were equally open to them" [19 Am.Jur., Estoppel, § 86, p. 742].'" *Pickett v. Associates Discount Corporation of Wyoming*, Wyo., 435 P.2d 445, 447 (1967), quoting from *McCarthy v. Union Pacific Ry. Co.*, 58 Wyo. 308, 131 P.2d 326 (1942).

"* * * [O]ne relying on an estoppel must have exercised such reasonable diligence to acquire knowledge of the real facts as the circumstances of the case required." 31 C.J.S. Estoppel § 71b, p. 434.

" * * * If the rules so announced were to be held applicable to the case at bar, it is apparent that the assessor, whose duty it was to examine the records, could not rely upon any estoppel, and the purchaser of the tax title would be in no better position since he derives his title through the initial acts of the former, and if one of the legal steps leading up to the tax title fails, they all fail. *Tintic Undine Mining Co. v. Ercanbrack*, 93 Utah 561, 74 P.2d 1184, 1187." *McCarthy v. Union Pacific Ry. Co.*, supra, 131 P.2d at 330–331.

This court concurs in Justice Blume's statement quoted above.

### 3. *Laches*

■ The court in *McCarthy*, 131 P.2d at 333, quotes authorities on appellant's third ground of appeal, as follows:

" * * * 'Mere inaction,' it said, 'on the part of the land owner with knowledge that his land has been sold for non-payment of taxes does not, however, estop him from contesting the validity of the sale. * * * The doctrine of laches has no application when the plaintiff (the appellant here) [appellee Brown here] is seeking to enforce a legal title, and he can be barred only by the statute of limitations.' 26 R.C.L. 447; 61 C.J. 1413, 1435–1436; Marysville Inv. Co. v. Halle, 58 Kan. 773, 51 P. 281. * * * ' "

With this statement the court also agrees.

### BROWN'S CROSS APPEAL

■ With respect to appellant Brown's cross appeal, he admits that under the pleadings the trial court should not have quieted the title in him as against appellee Morad without possession of her tract, but he contends that it could have been accomplished under the Declaratory Judgment Act or under Rule 15(b), W.R.C.P. The trial court used the Declaratory Judgment Act to hold for Brown against the other defendants, and Brown did move for relief under Rule 15(b), which motion was denied.

As has been heretofore said, the court correctly disposed of the two main issues in the case before it, namely, that the Morad tax-based title was void and Brown's legal title was proven. This *in effect* quiets title, but falls short of giving Brown possession or a decree to that effect.

The Declaratory Judgment Act (§ 1–1062, W.S.1957)

" * * * is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

In *Ohio Oil Co. v. Wyoming Agency*, supra, 179 P.2d at 780, the court noted that:

" * * * An action to quit title is essentially an action for declaratory relief."

Plaintiff there brought a suit to quiet title to a severed mineral interest, but it did not allege that it was in possession, because neither party was in actual possession. The court held, inter alia:

"Counsel have not asked us to notice the Uniform Declaratory Judgment Act * * * in this connection, but we think it is not improper for us to add that, after a trial of issues raised by pleadings showing a dispute over the title, we should not reverse the judgment which may be sustained under that act."

In the case at Bar, Brown did and has asked us to notice the Act. We see no reason why possibly the obverse of that holding should not apply here. We do reverse the trial court in this particular to avoid multiplicity of suits, and remand the case to the district court for further proceedings consistent with this opinion, including the taking of further evidence with respect to the occupying claimant's act in the event that appellee Morad files amended pleading.

Affirmed in part; reversed and remanded in part.