Lovey K. BRAGG and Elbert Henry
Bragg, Appellants (Plaintiffs),

v.

Roy E. MARION, et al., Appellees
(Defendants).

No. 5754.

Supreme Court of Wyoming.

May 16, 1983.

Robert A. Monteith of Russell, Greenhawt & Rummel, P.C., Rawlins, for appellants.

Michael M. Hoch, Laramie, for appellees.

Before ROONEY, C.J.,* and RAPER, THOMAS, ROSE ** and BROWN, JJ.

BROWN, Justice.

The trial court found against appellants in their quiet title action, which appellants were claiming through a quitclaim deed. The court found, among other things, that appellants failed to show "a connected chain of title vesting a legal estate in them," and failed to show possession. After the trial court's letter opinion, appellants moved to amend the pleadings to conform to the evidence by asking to be allowed to plead ejectment. The trial court refused to allow the amendment, apparent

* Became Chief Justice on January 1, 1983.

** Chief Justice at time of oral argument.

ly considering it to be untimely. On appeal, appellants ask this court to notice the Uniform Declaratory Judgment Act. § 1–37–101, et seq., W.S.1977.

Appellants raise several issues on appeal. They contend that it is not necessary to show a connected chain of title beyond the common grantor to adverse parties in a quiet title or ejectment action. They also contend that the trial court erred in finding that appellants received no estate in real property by virtue of their quitclaim deed. They finally contend that the trial court erred when it denied their motion to amend the complaint to conform to the proof and request ejectment.

We will reverse and remand.

Appellants' initial pleadings followed Form 16 set out in Wyoming Rules of Civil Procedure, "complaint in action to quiet title." Appellants apparently pursued a quiet title action through trial. The issues upon which the case was to be tried were set out in the pretrial order:

"A. The parties agree that the issues to this litigation should be framed as follows:

"1. Is the Heath-Bragg quitclaim deed sufficient in properly describing the premises intended to be conveyed?

"2. Is a quitclaim deed void for lack of delivery and consideration?"

■ We do not know what theory was contemplated by these issues, nor do we know that any cause of action could be determined by a resolution of them. Appellants, in their post trial motions conceded that they failed to prove a traditional quiet title action. A quiet title action requires proof of possession, while an ejectment action requires proof that the complainant is illegally being kept from possession.[1]

The principal thrust of this appeal, then, is the court's denial of appellants' motion to amend. We now consider the effect of Rule 15(b), Wyoming Rules of Civil Procedure:

"When issues not raised by pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. * * *"

Rule 15(b), Federal Rules of Civil Procedure, contains language identical to that portion of Rule 15(b), W.R.C.P., set out above.

When a motion is made to amend or conform to the proof, the court must determine if an issue not within the scope of the pleadings was tried with the express or implied consent of the parties. *Knudson v. Boren*, 261 F.2d 15 (10th Cir.1958).

" * * * Express consent may be given by stipulation, or may be incorporated in a pretrial order and rarely raises any serious fact questions. Implied consent, however, is much more difficult to establish and seems to depend on whether the parties recognized that an issue not presented by the pleadings entered the case at trial. A party who knowingly acquiesces in the introduction of evidence relating to issues that are beyond the pleadings is in no position to contest a motion to conform. Thus, consent generally is found when evidence is introduced without objection, or when the party op-

---

1. Section 1–32–201, W.S.1977:

"An action may be brought by a person in possession of real property against any person who claims an estate or interest therein adverse to him, for the purpose of determining the adverse estate or interest. The person bringing the action may hold possession himself or by his tenant."

Section 1–32–202, W.S.1977:

"In an action to recover real property it is sufficient if the plaintiff's petition states that he has a legal estate in and is entitled to possession of the real property, describing the same with sufficient certainty as to enable an officer holding an execution to identify it, and that the defendant unlawfully keeps him out of possession. It is not necessary to state how the plaintiff's estate or ownership is derived."

posing the motion to amend produced evidence bearing on the new issue. Other factors may lead to a contrary conclusion, however. * * * [W]hen the evidence that is claimed to show that issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there was no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under the first portion of Rule 15(b).

&ast; &ast; &ast; &ast; &ast; &ast;

"Courts occasionally refuse to permit amendments on the ground that to do so would be prejudicial to the opposing party. * * * When a party does not recognize the significance of the introduction of certain evidence at trial and therefore neglects to contest it, a motion to amend could be denied either because the party would be prejudiced in the presentation of his case or because he could not realistically be said to have given his implied consent. Of course, the litigant's failure to comprehend the purpose of the deviating evidence must be reasonable." Wright & Miller, Federal Practice and Procedure § 1493, pp. 461–469 (1971).[2]

If the court determines that an issue was tried with the express or implied consent of the parties it has no discretion to refuse to allow the amendment. In this event the amendment is mandatory. *Wal-lin v. Fuller*, 476 F.2d 1204, 1210 (5th Cir. 1973).

Federal Procedure, L.Ed. § 62:289 (1981), says:

"In keeping with its purpose to insure that the parties prevail or fail on the merits rather than on the technical niceties of the pleadings, the first sentence of FRCP 15(b) envisions and allows liberal allowance of amendments to conform the pleadings to the evidence. Such a policy necessarily entails the exercise of discretion by the trial court. Thus, the question whether an issue was tried with the express or implied consent of the parties is a matter entrusted to the sound discretion of the trial court, and its finding in this regard will not be disturbed on appeal in the absence of an abuse of such discretion. However, the court's discretion is limited to finding whether the issue was tried with the express or implied consent of the parties. If it was, the court has no discretion to refuse to allow the amendment; in such a case, the amendment is mandatory."

The trial court here made no findings whether the issue of ejectment was tried by implied consent. Neither did it make any finding whether appellants might be entitled to relief on their quiet title claim under the Declaratory Judgment Act under the evidence presented, understandably so, since appellants did not mention the Declaratory Judgment Act in their motion to amend.[3]

---

**2.** The following is an example of how a court uses its discretion to decide whether an issue could fairly be said to have been tried by express or implied consent.

"Although leave to amend pleadings should be freely given when justice requires, the trial judge's discretion is broad and its sound exercise usually depends on the presence or absence of such factors as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' [Citations.] In a motion under rule 15(b) to amend the complaint to conform to the proof, the most important question is whether the new issues were tried by the parties' express or implied consent

and whether the defendant 'would be prejudiced by the implied amendment, i.e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory.' 3 Moore's Federal Practice para 15.13[2], at 993 (2d ed. 1966) [Citations.]. The purpose of Rule 15(b) is to allow the pleadings to conform to issues actually tried, not to extend the pleadings to introduce issues inferentially suggested by incidental evidence in the record. [Citations.] * * *" *Browning Debenture Holders' Committee v. Dasa Corporation*, 560 F.2d 1078, 1086 (2nd Cir.1977).

**3.** "Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other

In *Ohio Oil Co. v. Wyoming Agency,* 63 Wyo. 187, 179 P.2d 773, 780 (1947), we said: " * * * An action to quiet title is essentially an action for declaratory relief. *Holly Sugar Corp. v. Fritzler,* 42 Wyo. 446, 462, 296 P. 206; Borchard on Declaratory Judgments (2d ed.) 139. It has been said that the act provides for 'a kind of expanded bill quia timet, meant to do in general what that suit did in its limited field.' Judge L. Hand in *Meeker v. Baxter,* 2 Cir., 83 F.2d 183, 187. *That the purpose of the act 'to settle and to afford relief from uncertainty and insecurity with respect to rights' (Sec. 3–5812) may be carried out in actions not expressly based on the act, is shown by many cases.* [Emphasis added.] *Hasselbring v. Koepke,* 263 Mich. 466, 248 N.W. 869, 93 A.L.R. 1170 (action to enjoin interference with a claimed easement) * * * *Teal v. Maxon,* 233 Ala. 23, 169 So. 477 (action to quiet title to land not in plaintiff's possession). In *Renwick v. Hay,* 90 N.J.Eq. 148, 106 A. 547 (noticed in *Holly Sugar Corp. v. Fritzler,* 42 Wyo. at page 464, 296 P. at page 210), a suit to determine rights in private ways, it was held that relief might be granted by considering the case either as one in equity or as one under the declaratory judgment act. In *Faulkner v. Keene,* 85 N.H. 147, 156, 155 A. 195, 201, it is stated that 'The cause being plainly presented to the court, the appropriate remedy will be granted, however erroneously the proceeding be entitled.' See, also, Borchard on Declaratory Judgments, pp. 427, 741."

Anderson on declaratory judgments says: "A declaratory action is an appropriate remedy for the construction and interpretation of a deed or other muniment of title. This is true only if a justiciable controversy is present in the action. The action has been invoked to determine kaleidoscopic complicated questions arising from contentions and controversies with respect to the interpretation of deeds

* * *." 2 Anderson, Declaratory Judgments, § 608, Construction of Deeds, pp. 1359–1360 (1951).

In *Ohio Oil v. Wyoming Agency,* supra, plaintiff-appellee sued to quiet title. The trial court quieted title in plaintiff-appellee. We noted that plaintiff had not been in actual possession, but that the evidence was sufficient to prove title to a "mineral fee." We stated that the trial issues raised by pleadings showed a dispute over title, and that we would not reverse a judgment which might be sustained under the Declaratory Judgment Act then in effect, even though appellant had not asked us to notice the Declaratory Judgment Act.

In *Morad v. Brown,* Wyo., 549 P.2d 312 (1976), cross-appellant Brown, plaintiff below, had filed to quiet title against Morad to a tract of land which Brown did not possess. Brown moved for relief under Rule 15(b), W.R.C.P., which motion was denied. Brown admitted that under his original pleadings, the trial court should not have quieted the title in him against Morad because Brown was not in possession. It is not clear from the case whether Brown's motion for relief under Rule 15(b) mentioned the Declaratory Judgment Act. The trial court had used the Declaratory Judgment Act to hold for Brown against defendants other than Morad in the action. This court decided that the trial court had correctly disposed of the two main issues before it, which were that Morad's tax-based title was void and that Brown's legal title was proved. We noted that, in effect, the trial court had quieted title in Brown, even though Brown was not in possession and Morad was. We also noted that the trial court fell short of giving Brown possession or a decree to that effect. We reversed, indirectly ordering the trial court to enter an order quieting title in Brown, under the Declaratory Judgment Act. We did allow further proceedings concerning the value of any claim Morad might have against Brown

legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations." Section 1–37–103, W.S.1977.

for improvements Morad had placed on the property.

This court has cited Rule 15(b), W.R.C.P., as a basis for conforming the pleadings to the proof on appeal, even though the Rules of Civil Procedure are not the rules under which this court proceeds. In *Lore v. Town of Douglas,* Wyo., 355 P.2d 367 (1960), we stated that we were cognizant of appellate courts' reluctance to assume or permit an amendment to conform the pleadings to the proof to reverse an otherwise correct judgment. We went on to use Rule 15(b), W.R.C.P. to decide that the issue of negligence by a municipality had been tried with the implied consent of the parties. We then reversed and remanded, saying that testimony showing negligence was unrebutted. The case was resubmitted to the trial court so that it would have "an opportunity to determine, according to definite standards, the care which was requisite under the circumstances." *Lore v. Town of Douglas,* supra, at 371.

This court, then, has used the Declaratory Judgment Act to uphold a decision to quiet title, even though the decision to quiet title was technically incorrect on the question of possession, and even though appellant did not raise the Declaratory Judgment Act below or on appeal. *Ohio Oil v. Wyoming Agency,* supra. It has also used the Declaratory Judgment Act to reverse and direct the trial court to quiet title in an appellant. *Morad v. Brown,* supra. It has also assumed or permitted an amendment to allow the pleadings to conform to the proof, and then reversed the judgment based on uncontradicted evidence in the record. *Lore v. Town of Douglas,* supra.

■ We are going to take none of these courses of action here. The courts which affirm or reverse judgments on theories other than those used by the lower courts should do so only if the record

"* * * clearly indicates that the issue on which the case is to be affirmed actually was tried with the knowing consent of the parties. However, if the record is incomplete or if it is uncertain whether the party opposing the motion to amend had notice of the unpleaded issue at the trial stage, the appellate court should render its decision in conformity with the issues relied upon by the lower court in reaching its judgment." Wright & Miller, Federal Practice and Procedure § 1494, p. 478 (1971).

■ In this case, the record is not clear whether appellees had notice of the possible unpleaded issues of ejectment and of validity of title under the Declaratory Judgment Act. We could, then, merely address the question whether the trial court was correct in its decision under the quiet title statute; if it was, we could affirm. However, we do not want to affirm, because the trial court did not determine if the issues of ejectment or of validity of title under the Declaratory Judgment Act were impliedly tried. Although we have ruled before that issues have been impliedly tried when such question has not been presented to the trial court first, we think we have been too eager in the past in these types of cases to perform a task which is best left to the trial court's discretion.

We therefore hold that the trial court should determine if the issue of ejectment was tried by the implied consent of the parties or if the issue of the validity of title was impliedly tried under the Declaratory Judgment Act. If it decides that either of these issues was impliedly tried, then it must allow the amendment and make a determination whether appellants were entitled to prevail under either of these theories. It may be necessary for the court to take additional evidence or to have a new trial to properly resolve the issues we have addressed.

Reversed and remanded for proceedings consistent with this opinion.

RAPER, Justice, concurring in part and dissenting in part.

I concur with the majority opinion only to the extent of reversing the district judge on the grounds that the case should be treated as one for declaratory judgment.

I am convinced that it is a question of law as to whether or not the case was tried in such a fashion that the plaintiffs were entitled to amend their complaint to the extent of asking for the relief of ejectment to which they have shown themselves entitled. The same basic premise exists in an ejectment action and a quiet title action. If the plaintiffs establish title in themselves and are otherwise entitled to possession, then they are entitled to have the trespasser ejected, even though they may have initially prayed for a decree quieting title, particularly under the circumstances of this case.

In going through the district court file, it should be noted that plaintiffs joined as defendants many persons and entities practically all of whom were in default at the time of trial. The only answering defendants were Helen B. Heath, Dolly Irene Hunter, Roy and Zadabeth Marion and Leona Fern Ellison. The first time this case was appealed, we dismissed it because of Rule 54(b), W.R.C.P. in that all of the many other persons named as defendants had not been closed out by a default judgment. Eventually a default judgment quieting title in the plaintiffs as against its non-answering defendants was entered and the appeal to this court finally perfected. There was a quiet title aspect to the case as to those many other defendants.

At a point prior to trial, the district court entered summary judgment in favor of the Braggs on the issue of adequate and sufficient consideration for the Heath-Bragg quitclaim deed but at the same time denied summary judgment on the issue of delivery and on the issue of adequacy of the quitclaim deed from Mrs. Heath to the plaintiffs because of issues of fact as to those matters. The outcome of the case as to proper relief would, therefore, depend upon who appeared. While the plaintiffs were perhaps careless in not seeking an amendment sooner, still the title status of the parties would not be established until all of the evidence was in. Rule 15(b), W.R.C.P. is not so inflexible that appropriate amendments cannot be made at almost any time. It is also interesting and pertinent that in their complaint, the plaintiffs prayed that not only title be quieted and that the defendants be adjudged to have no right, title, or interest but also "that Plaintiffs have such other and further relief as is proper in the premises." I would hold that the plaintiffs are entitled to amend as a matter of law, and there is no need to remand the case for the district judge to make any findings or decisions in that regard.

In reversing the district court, I would direct entry of a judgment ejecting the defendants, if they are in fact in possession of the eighty acres. Apparently some of the defendants have been doing road construction work on the premises. On the basis that the plaintiffs have, as a matter of law, shown an uninterrupted chain of good title, the defendants should be ejected. The documentary evidence alone establishes such a title. The Producers Gold and Copper Mining and Milling Company filed on the Clara B., Emma G., Gold Coin, and Olney lode mining claims which were described in Survey Number 423, in a described portion of Section 34, Township 18 North of Range 78 West of the 6th p.m. in Carbon County, Wyoming. Thereafter, the United States issued a patent to those claims and incorporated into the patent the same description as disclosed by Survey Number 423.

Thereafter Sol R. Teague acquired title somehow from the mining company. No one challenges any mesne conveyances between the patent and Teague's title. Both sides depend on Teague's title. By a regularly recorded deed made on May 6, 1971, recorded May 11, 1971, Teague conveyed to one of his daughters, Helen B. Heath, all of his interest in the above described claims embraced by Survey Number 423. On November 1, 1977, by a quitclaim deed, recorded November 7, 1977, Helen B. Heath conveyed all of her interest to the plaintiffs in this action, describing the property only by references to the claim names, covered by Government Survey Number 423, excepting only a two-acre tract. Thereafter, on October 19, 1978, the district court for Carbon County entered a decree determining the

heirship of Sol Rogers Teague and named four daughters, the defendants and appellees in this action, and held that each was entitled to an undivided one-quarter interest in the real property owned by the decedent, Sol Rogers Teague and described the claims embraced by the United States patent.

The trial judge in this case entered a judgment. The court's substantive holding was that plaintiffs failed to show a connected chain of title vesting a legal estate in them and that the deed which the plaintiffs had, which referred only to a survey describing various mining claims, was extinguished upon the issuance of a fee patent. Perhaps the mining claims were superseded by a patent, but that makes no difference. The patent in evidence does not extinguish the mining claims. It continues to identify the premises as the Clara B., Emma G., Gold Coin, and Olney parcels as described by Survey No. 423 and only perpetuates the rights thereto.[1] It is noted that the decree determining heirship also describes the property owned by Sol Rogers Teague as "Those certain patented mining claims (Patent, the United States of America, No. 91959, issued November 29, 1909, General Land Office No. Cheyenne 06) known as the Clara B., Emma G., Gold Coin, and Olney lode mining claims, designated by the Surveyor General as Survey No. 423 * * *." The only purpose in the deed for referring to the mining claims was to describe the land conveyed in that the patent had already issued. If that is not so, then Mrs. Heath defrauded the plaintiff; but I do not think the latter to be the case.

I am satisfied with the law set out in the plaintiffs' brief to the extent that what can be made certain, is certain. The reference to land made in the quitclaim deed to the plaintiffs was to land as embraced by Survey Number 423. Survey Number 423 does embrace the land conveyed as appears more fully in the patent. It should be noted that

in the Heath-Bragg deed, there is a reference made to "less Tracts in Clara B. 2 A. more or less." That tract appears to have been a two-acre tract divided into twelve lots, each of which varies in size from 100 × 100 feet to 75 × 125 feet, as cabin sites. Cabin No. 1, on the excepted two acres, was owned by someone else for some thirty years.

It seems to me that the only question in this case is whether the plaintiffs' title is better than that of the defendants. It was acquired by plaintiffs prior in time by valid deed from Sol R. Teague before his death. The determination of heirship was subsequent but there was then no land of Teague left for the named heirs. It had been transferred to his daughter who sold to plaintiffs. The defendants produced no muniments of title other than the determination of heirship which is late in point of time. Heirs cannot establish title by such a proceeding in land which the decedent did not own.

I am convinced that the plaintiffs proved their title clearly and unquestionably and are entitled to a decree ejecting the defendants. The only question I can see involves location of the cabins. It is not as clear as perhaps it could be whether cabins are located on the eighty-acre tract covered by the Heath-Bragg deed or whether they are in the subdivided two acres which were excepted by Mrs. Heath. The transcript of testimony tells me they are not on the eighty acres. There might be some question about an occupying claimant's right under § 1–32–206, et seq., W.S.1977. There was no alternative counterclaim count by defendants asking for value of any cabin.

I cannot figure out really what would be accomplished by remanding and directing the district judge to make certain findings, which he will do and the case may end up in exactly the same posture as at the present time. So, as I see it we will probably have

---

1. The metes and bounds description of each parcel begins with the language: "Beginning, for the description of the Clara B. lode claim, at corner No. 1, * * *"; "Beginning, for the description of the Emma G. lode claim, at corner No. 1, * * *"; "Beginning, for the description of the Gold Coin lode claim, at corner No. 1, * * *"; and "Beginning, for the description of the Olney lode claim, at corner No. 1, * * *."

another appeal back in our laps in which exactly the same issues as we have before us will be presented. It is suggested they should and can be settled now.

I would, therefore, reverse the district court in all respects accordingly.

THOMAS, Justice, specially concurring.

I am in accord with both the majority of the court and Justice Raper that this case should be reversed. It is clear to me that the district court erred in refusing to permit the amendment by the plaintiffs pursuant to Rule 15(b), W.R.C.P. The evidence that was submitted was sufficient to try title under either § 1–32–201, W.S.1977, or § 1–32–202, W.S.1977, including the question of whether the plaintiffs were or were not in possession of the real property in issue. In accordance, then, with the authorities cited in the majority opinion, the amendment which was sought pursuant to Rule 15(b), W.R.C.P., should have been permitted. It does not seem to me that it is material whether the Uniform Declaratory Judgments Act was presented as a part of the appellants' motion in the district court because in this instance the relief would be identical.

I find that I am satisfied as well that the district court erred in its Finding No. 1, which reads:

"Plaintiffs have failed to show in their presentation of evidence, a connected chain of title vesting a legal estate in them to certain real property described in their complaint as follows: (Cabin # 1) Lode Claims, Sur. # 423 Olney, Gold Coin, Emma G. & Clara B.S. 34–18–78 82.282 A. less Tracts in Clara B. (2 A. more or less 80A.)"

As Justice Raper points out, the law does not require the appellants to establish a chain of title beyond the common grantor, in this instance Sol Rogers Teague. *Torgeson v. Connelly,* Wyo., 348 P.2d 63 (1959); *Dame v. Mileski,* 80 Wyo. 156, 340 P.2d 205 (1959); and *York v. James,* 62 Wyo. 184, 165 P.2d 109, 162 A.L.R. 831 (1946). I, therefore, agree with Justice Raper's disposition of this particular issue.

I also am satisfied, as is Justice Raper, that the issuance of the patent to the mining claims did not have any impact upon the title which is in issue. The real property in question retained the same legal description after the patent as it had before. The difference simply is that prior to the patent the right of ownership was limited to a right to receive a patent upon compliance with the statutory conditions. After the patent the patentee owned the property in fee simple, and a conclusion that the issuance of the patent required the appellants to prove their chain of title beyond ownership by the common grantor is erroneous.

At this juncture I arrive at concerns which are somewhat different from either the majority opinion or Justice Raper's position. These relate to the second issue as stated by the appellants in their brief as follows:

"Did the Court err in finding that Appellants received no estate in real property by virtue of the Heath-Bragg quitclaim deed?"

My perceptions of this case leave me with the conclusion that the deed from Helen B. Heath to the appellants is ambiguous so far as the description of the property conveyed is concerned. While the position of the appellants is that the deed is not ambiguous, they do contend that ambiguity would not cause the deed to fail. With this latter contention I am in accord.

The deed to Helen B. Heath from Teague describes the property as follows:

"Lode Claims, Sur # 423, S. 34–18–78 Olney, Gold Coin, Emma G. & Clara B. 82.282 A. Less tracts sold out of Clara B. (2A. M or L) 80 A."

The description in the deed from Helen B. Heath to the Braggs reads as follows:

"(Cabin # 1) Lode Claims, Sur. # 423 Olney, Gold Coin, Emma G. & Clara B S. 34–18–78 82.282 A. less Tracts in Clara B. 2 A. more or less 80A. Book 559/354."

The thrust of appellants' position is that they received by virtue of this conveyance all of the described lode claims less certain tracts located in the Clara B. claim consist-

ing of 2 acres more or less. My concern arises out of the necessity for ascribing some significance to the phrase "(Cabin # 1)," and I conclude that the deed is susceptible to the construction that there was conveyed to the Braggs a tract identifiable from the parenthetical phrase "(Cabin # 1)" within these several lode claims, but which tract could only be ascertained by the assistance of extrinsic evidence.

It is elementary that the Braggs are called upon to establish their claim by demonstrating the strength of their own title, and cannot simply rely upon any weakness in the defendant's title. *Allen v. Houn,* 30 Wyo. 186, 219 P. 573 (1923); *Lee v. Cook,* 2 Wyo. 312 (1880); 25 Am.Jur.2d Ejectment § 19, p. 553; and 28 C.J.S. Ejectment § 10, p. 856. This proposition, of course, calls upon the Braggs to demonstrate the extent of their ownership in or title to the tract in question, whether only part of the tract or all of the tract.

I, therefore, would reverse and remand this case to the district court. I would require the district court to allow the amendment under Rule 15(b), W.R.C.P., but I would direct the district court to resolve the ambiguity in the deed. If additional evidence were required in order to resolve that ambiguity the district court should proceed with a further hearing to develop such evidence. In this disposition I then agree with Justice Raper that the only question is whether the appellants' title is better than that of the appellees, but I would require in addition the resolution of the question of the extent of appellants' ownership in the tract.