WEIR, OHIO DIRECTOR OF TRANSPORTATION, APPELLEE, *v.* GILLESPIE ET AL., APPELLANTS; SLATER, COUNTY AUDITOR, APPELLEE.

(No. 8-83-8 — Decided May 2, 1985.)

Anthony J. Celebrezze, Jr., attorney general, and *Norman P. Smith,* for appellee Weir.

*Atha, Kelly, Dodge & Traul* and *John B. Kelly,* for appellants.

*C. Douglas Chamberlain,* for appellee auditor.

*Per Curiam.* Defendants Ed Gillespie and Evelyn D. Gillespie appeal from a judgment of the Court of Common Pleas of Logan County whereby title to certain real estate was quieted in defendants' favor subject, however, to an easement for highway purposes in favor of the state of Ohio.

The evidence indicates that prior to July 12, 1962, the state of Ohio acquired three separate highway easements over the subject real estate. On July 12, 1962, the state acquired the entire fee simple title to the real estate by warranty deed from the previous owners, Albert and Zella Conn.

Beginning in October 1962, the state rented the entire property to a Robert Heyob. The lease between the state and Heyob was eventually cancelled in March 1964.

On May 11, 1965, after hearing, the then State Highway Director approved the "Relocation and Establishment of Limited Access Highway for State Route U.S. No. 68" over the property which is the subject of this action.

The evidence indicates that during the time that the state held fee simple title to the real estate, it never filed for or received real estate tax exemption with respect to the property. On January 16, 1967, the Board of Revision of Logan County included the subject property on its list of lands to be forfeited to the state for tax delinquency. On April 7, 1967, the property was ordered forfeited to the state of Ohio by the Court of Common Pleas of Logan County.

Defendants purchased the entire tract here involved at the Logan County Auditor's sale of forfeited land in June 1967, receiving an auditor's deed therefor dated June 6, 1967, the premises being transferred by the Logan County Auditor that same date, and the deed being recorded on November 17, 1967.

It is indicated in the record that, on August 23, 1967, the Department of Highways communicated to defendant Ed Gillespie that, since the property would someday be needed for the State Route 68 project, it would be unwise for defendants to expend money to improve the land.

On December 15, 1980, the Ohio Department of Transportation filed a complaint alleging that the state was the owner of the property in question. The state asked the court below to declare defendants' deed null and void and to declare a fair amount to be paid to defendants to reimburse defendants for taxes, assessments, penalties or costs paid by them and for improvements made by them. An amended complaint was filed in July 1982.

Defendants answered and counterclaimed, asking the court to quiet title to the real estate in them.

A hearing was had on October 25, 1982, and stipulated exhibits, evidence and memorandums were submitted for consideration.

On May 13, 1983, the court below entered its judgment that defendants were the owners of the real estate subject, however, to an easement for highway purposes for the relocation and establishment of a limited access highway for State Route 68.

Defendants appeal setting forth five assignments of error:

"1. The Court erred in that it did not dismiss the plaintiff's case on the motion of the defendants duly made under authority of Ohio Revised Code, Section 5723.13 as in effect on June 6, 1967.

"2. The Court erred in not finding that the plaintiff had no standing before the Court under authority of Ohio Revised Code Section 5723.13 as in effect on June 6, 1967.

"3. The Court erred in subjecting the fee title of the defendants to an easement that never previously existed thereby exceeding the authority granted

to it by the Constitution of Ohio, by the authority granted to it by the legislature, and by the authority which it obtains by reason of the common law.

"4. The Court erred in that it took from the defendants, property which they owned, without compensation and without due process, by creating an easement upon their land which had not previously existed.

"5. The Court erred in granting to the State of Ohio an easement for highway purposes over the subject real estate for to do so violated equitable principals [*sic*] among which are laches, estoppel and acquiescence."

Fundamental to this appeal is the validity of the sale of state-owned land by the county auditor to satisfy delinquent tax payments.

In *Cincinnati* v. *Hynicki* (1909), 9 Ohio N.P. (N.S.) 273, affirmed without opinion (1911), 84 Ohio St. 446, the court said at 283:

"The court is of the opinion that the law should prevent the sale of public grounds for the non-payment of a tax charged against the grounds. The means and modes prescribed for raising revenue by a tax on property were made in reference to the property, real and personal, of the individual. * * *

"The sale of public property — public grounds — to collect a tax would destroy the government."

Paragraph five of the syllabus of *State* v. *Griftner* (1899), 61 Ohio St. 201, states:

"A tax sale of lands belonging to the state is void, and confers no right to the lands upon the purchaser."

Admittedly that case differs from the case *sub judice* in that the land had been tax exempt whereas in this case no exemption was ever sought and obtained.

R.C. 5713.081, originally effective November 24, 1967, provides as pertinent:

"On and after January 1, 1969, all taxes, penalties, and interest, that are more than one year delinquent, appearing on the general tax list and duplicate of real property which have been levied and assessed against parcels of real property owned by the state, any political subdivision, or any other entity whose ownership of real property would constitute public ownership thereof, shall be collected by the county auditor of the county where the real property is located. Such official shall deduct from each distribution made by him, the amount necessary to pay the tax delinquency from any revenues or funds to the credit of the state, any political subdivision, or any other entity whose ownership of real property would constitute public ownership thereof, passing under his control, or which come into his possession, and such deductions shall be made on a continuing basis until all delinquent taxes, penalties, and interest noted in this section have been paid."

In adopting R.C. 5713.081, Am. S. B. No. 351, the same was entitled:

"To enact section 5713.081 of the Revised Code relative to the exemption from taxation, and the remission of taxes, penalties and interest thereon of real property, the title to which is in the state or any political subdivision thereof and after December 31, 1968, to limit the right of real property tax remission for all real property to a one-year period, regardless of ownership thereof, to provide in section 2 a temporary procedure for obtaining exemption from taxation and remission of all delinquent taxes, penalties, and interest on or before such date, *and· to provide a method for the collection of delinquent taxes, penalties and interest that have accrued on publicly owned property.*" (Emphasis added.) (132 Ohio Laws, Part II, 2324-2325.)

The above leads only to the conclusion that no authority existed in 1967 for the county auditor to sell state-owned

lands for taxes and that the purported sale was void.

A tax purchaser acquires no title, at law or in equity, unless the land has been taxed and a sale conducted according to law. No valid deed can be made to a purchaser at a void tax sale. 51 Ohio Jurisprudence 2d (1962) 645, Taxation, Section 496.

Defendants rely on the limitation of R.C. 5723.13 as barring the state from bringing this action.

R.C. 5723.13 provides:

"Whenever real property in this state is sold under sections 5721.01 to 5721.28, inclusive, or 5723.01 to 5723.19, inclusive, of the Revised Code, no action shall be commenced, nor shall any defense be set up to question the validity of the title of the purchasers at such sale for any *irregularity, informality, or omission in the proceedings relative to the foreclosure, forfeiture, or sale,* unless such action is commenced or defense set up within one year after the deed to such property is filed for record." (Emphasis added.)

This section limits the bringing of actions as to irregularity, informality, or omissions in proceedings in foreclosure sales.

Where the sale is invalid and no title at all passes to the purchaser, such constitutes more than an irregularity or omission and renders the entire proceeding void.

We thus conclude that the limitation of R.C. 5723.13 does not apply to an action by the state in an instance such as the one herein nor does laches, estoppel or acquiescence preclude the trial court's action.

We also conclude that the trial court did not err in refusing to dismiss plaintiff's case or in not finding that plaintiff had no standing under R.C. 5723.13.

We further conclude that the trial court did not err in subjecting the land to the easements or designated uses for highway purposes that the state had set forth in its prior resolution, nor did the trial court's action amount to a taking without due process and just compensation.

Defendants' assignments of error are not well-taken.

Plaintiff, although not filing a notice of appeal, has set forth four assignments of error.

R.C. 2505.22 provides as pertinent:

"Assignments of error may be filed on behalf of an appellee which shall be passed upon by a reviewing court before a judgment or order is reversed in whole or in part. * * *"

In *Parton* v. *Weilnau* (1959), 169 Ohio St. 145, 170 [8 O.O.2d 134], the court, in construing R.C. 2505.22, stated:

"* * * [S]uch an assignment of error 'shall be passed upon * * * [only] before a judgment or order is reversed.' * * *"

See, also, *Duracote Corp.* v. *Goodyear Tire & Rubber Co.* (1983), 2 Ohio St. 3d 160, 163.

Thus, we finally conclude that, since the plaintiff, as appellee, filed no notice of appeal as to the trial court's judgment, we cannot consider its assignments of error.

*Judgment affirmed.*

GUERNSEY, P.J., COLE and MILLER, JJ., concur.