# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 24

**OCTOBER TERM, A.D. 2016**

**March 3, 2017**

ANADARKO LAND CORPORATION
f/k/a UNION PACIFIC LAND
RESOURCES CORPORATION, a
Nebraska Corporation, and THREE
SISTERS, LLC, a Wyoming Limited
Liability Company,

Appellants
(Defendants),

v.

S-16-0131

FAMILY TREE CORPORATION, a
Wyoming Corporation,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellants:*

Patrick R. Day, P.C.; Walter F. Eggers III, P.C.; and JoAnna S. DeWald of Holland & Hart LLP, Cheyenne, WY for Appellant Anadarko Land Corporation. Henry F. Bailey Jr. and Douglas W. Bailey of Bailey, Stock & Harmon, P.C., Cheyenne, WY for Appellant Three Sisters, LLC. Argument by Mr. Day.

*Representing Appellee:*

Lucas Buckley of Hathaway & Kunz, P.C., Cheyenne, WY.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**HILL, Justice**, delivered the opinion of the Court; **FOX, Justice**, filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1]    Anadarko Land Corporation (Anadarko) appeals a district court decision upholding the validity of a 1911 Laramie County tax assessment against minerals owned by Anadarko's predecessor, as well as the tax sale and tax deed that eventually emanated from the failure to pay those taxes.  We affirm.

## ISSUE

[¶2]    Anadarko presents a single issue on appeal:

> Whether the district court erred in quieting title to Appellee Family Tree based upon a 1912 tax sale that was void *ab initio*.

## FACTS

[¶3]    This case presents a dispute over title to certain mineral interests underlying Section 7, Township 14 North, Range 65 West, 6th P.M., in Laramie County (hereinafter Section 7).  Section 7, both its mineral and surface estates, was among lands that the United States, in 1901, granted by patent and deed to Union Pacific Railroad Company (Union Pacific).  The present title dispute arises out of a 1911 Laramie County tax assessment against Union Pacific's Section 7 mineral interests and the county's subsequent tax sale and issuance of a tax deed for the property.

### A.    Tax Assessment and Sale

[¶4]    In 1911, Laramie County assessed taxes on the unproduced minerals underlying Section 7.  Union Pacific did not pay the assessed taxes, and in 1912, Laramie County placed the Section 7 minerals up for bid at a tax sale.  No one bid on the Section 7 minerals, so Laramie County bid on and acquired the Section 7 minerals.  Union Pacific did not exercise its right to redeem the Section 7 minerals or otherwise seek to recover the property following the 1912 tax sale.

[¶5]    In 1919, Laramie County sold the Section 7 minerals to Iowa Land & Livestock Company.  The tax deed for the Section 7 minerals was not, however, issued until March 1949.  The record contains no explanation for the delay in issuing the tax deed, but the parties do not dispute that the deed resulted from the 1912 tax sale and Laramie County's subsequent sale of the Section 7 minerals in 1919.

1

## B. Diverging Chains of Title

[¶6]    Although Union Pacific did not exercise its right to redeem the Section 7 minerals or otherwise seek to recover the property following the 1912 tax sale, it thereafter conducted itself as if it still owned the Section 7 minerals.  In September 1914, Union Pacific conveyed Section 7 to Iowa Land & Livestock Company by warranty deed, and through that deed Union Pacific purported to reserve for itself, its successors and assigns, all oil, coal, and other minerals underlying Section 7.  Two claimed chains of title thus emerged following the 1912 tax sale, one stemming from Union Pacific's purported ownership of the Section 7 minerals, and one stemming from Laramie County's tax sale of the minerals and issuance of a tax deed.

### 1.  Appellant Anadarko's Title Claim

[¶7]    Appellant Anadarko Land Corporation (Anadarko) claims title to the Section 7 minerals by a direct conveyance from Union Pacific, several years after the tax sale. Specifically, in April 1971, Union Pacific conveyed, by quitclaim deed, its rights, title and interest in Section 7 to Union Pacific Land Resources Corporation, Anadarko's predecessor in interest.  Effective December 1, 2000, Union Pacific Land Resources Corporation changed its name to RME Land Corporation.  Effective October 1, 2002, RME Land Corporation changed its name to Anadarko Land Corporation (Anadarko). Anadarko's claim of title therefore originated with Union Pacific's original 1901 patent and its purported reservation of the Section 7 minerals in the 1914 conveyance from Union Pacific to Iowa Land and Livestock Company, and it concluded with the April 1971 conveyance.[1]

### 2.  Appellee Family Tree's Title Claim

[¶8]    Appellee Family Tree Corporation (Family Tree) claims title to portions of the Section 7 minerals.  In June 2010, Family Tree obtained certain of the Section 7 mineral interests by entering into an oil and gas lease.[2]  In June 2014, additional Section 7 mineral

---

[1] Anadarko's claimed interest in the Section 7 minerals was later divided by a settlement agreement with Three Sisters, LLC (Three Sisters), but that division will be discussed in conjunction with our discussion of Three Sisters' claimed interest in the Section 7 minerals.

[2] The mineral interests conveyed through the lease are described as follows:
PARCEL 1: All of the North One Half (N1/2) of Section 7,Township 14 North, Range 65 West of the 6th P.M., in Laramie County, Wyoming, and a parcel of land located in the Southwest Quarter (SW1/4) of said Section 7, being further described as follows:

> Beginning at the West ¼ corner of said Section 7, from which the Southwest Corner of said Section 7 bears South a distance of 2624.17 feet, thence S89°49'00"E along the North line of the Southwest One Quarter of said Section 7 a distance of 2638.70 feet to a

interests were conveyed to Family Tree by a mineral grant deed.[3]  The chain of title that led to Family Tree's lease and the mineral grant deed is as follows:

**September 15, 1914:**  Warranty Deed from Union Pacific to Iowa Land and Livestock, granting the surface of Section 7 and purporting to reserve the  Section 7 minerals.

**December 9, 1918:**  Warranty Deed from Iowa Land and Livestock to U.G. John conveying all of Section 7 with no express reservation of the Section 7 minerals.

**March 5, 1919:**  Minutes of county commissioners meeting reflecting the acceptance of the sale of the Section 7 minerals to Iowa Land and Livestock.

---

point, from which the Center ¼ corner of said Section 7 bears S89°49'00"E, a distance of 15.00 feet; thence S47°18'10"West a distance of 477.35feet; thence S86°02'15"W a distance of 1417.25 feet. Thence South a distance of 168.68 feet, thence S88° 55'30" West a distance of 513.09. Thence South a distance of 179.37 feet; thence West a distance of 361.00 feet to the West line of the southwest one quarter of said section 7; thence North along said West line a distance 787.75 feet to the point of beginning.  Said Parcel of land contains 27.12 acres, more or less.

PARCEL 2: A parcel of land in the Southwest One Quarter of Section 7 Township 14 North, Range 65 West of the 6th P.M., County of Laramie, State of Wyoming, more particularly described as follows:

Beginning at the West One Quarter corner of said Section 7, thence South along the West line of the Southwest One Quarter of said Section 7 a distance of 787.75 feet to the true point of beginning. Thence East a distance of 361.00 feet; thence North a distance of 179.37 feet, thence N88°55'30"E a distance of 513.09 feet, thence South a distance of 389.00 feet; thence West a distance of 874.00 feet to a point on the West line of the Southwest one Quarter of said Section 7, from which the Southwest Corner of said Section 7 bears South a distance of 1636.42 feet; thence North along said West line a distance of 200.00 feet to the true point of beginning.  Said parcel of land containing 6.18 acres, more or less.

[3] The mineral interests conveyed through the mineral grant deed are described as follows:

**Township 14 North, Range 65 West, 6th P.M.**
Section 7: A parcel of land situated in the Southwest Quarter of said section being more particularly described as follows:

Beginning at the Southwest Corner of said Section 7 and considering the West One Quarter Corner of Said Section 7, to bear North a distance of 2624.17 feet to a point, thence North along the West line of the Southwest One Quarter of said Section 7, a distance of 1636.42 feet to a point, thence East a distance of 874.00 feet to a point, thence North a distance of 557.68 feet to a point, thence N. 86°02'15" E. a distance of 1417.25 feet to a point, thence S. 00°19'00" W. a distance of 2307.18 feet to a point on the South line of the Southwest One Quarter of said Section 7, from which the South One Quarter Corner of said Section 7 bears S. 89°37'10" E. a distance of 378.97 feet thence N. 89°37'10" W. along the South line of the Southwest One Quarter of said Section 7 a distance of 2275.16 feet to the point of beginning.

3

**September 29, 1923:** Warranty Deed from U.G. John and Frances John to Bell Livestock conveying all of Section 7 with no express reservation of the Section 7 minerals.

**April 28, 1934:** Warranty Deed from Bell Livestock to Howard S. Christensen conveying all of Section 7 with no express reservation of the Section 7 minerals.

**March 2, 1949:** Laramie County Commissioner's Deed conveying to Iowa Land and Livestock all Section 7 minerals.

**November 4, 1969:** Warranty Deed from Howard S. and Verna M. Christensen to Ray L. Alexander and Georgia Alexander conveying a parcel of Section 7 with no express reservation of minerals.

**September 5, 1976:** Warranty Deed from Howard S. Christensen to Edward E. Kopsa and Phyllis E. Kopsa, and Bill McIlvain and Ila McIlvain conveying a parcel of Section 7 with no express reservation of minerals.

**September 29, 1976:** Warranty Deed from Howard S. Christensen to Ray L. and Georgia L. Alexander conveying to them a second parcel of Section 7 with no express reservation of minerals.

**June 23, 2003:** Warranty deed from the Alexanders to the Alexander Revocable Trust conveying both their Section 7 parcels with no express reservation of minerals.

**June 12, 2010:** Paid-Up Oil and Gas Lease between Family Tree as lessee and Raymond and Georgia Alexander, Trustees of the Alexander Revocable Trust, as lessors, leasing the Alexander Section 7 parcels to Family Tree.

**June 4, 2014:** Mineral Grant Deed between Family Tree, as grantee, and Bill D. McIlvain and Ila M. McIlvain, as grantors, conveying one-half of their interest in the minerals underlying their Section 7 lands.

### 3.   Appellant Three Sisters' Title Claim

[¶9]   Appellant Three Sisters also claims an ownership interest in the Section 7 minerals and is aligned with Anadarko. In their joint summary judgment memorandum, Anadarko and Three Sisters explained Three Sisters' interest:

> [O]n April 20, 2001, RME Land Corporation entered into a Settlement Agreement with Three Sisters, LLC whereby each party quitclaimed to the other all rights, title, and interests necessary to vest in each other an undivided ½ interest in the mineral estate of the Property. The Settlement Agreement was recorded on July 17, 2001 in the office of the County Clerk of Laramie County, Wyoming at Book 1601, Page 163.
> * * * *
>
> It is important to note that prior to the April 20 2001, Settlement Agreement between RME Land Corporation and Three Sisters, LLC, Three Sisters claimed it was the successor in interest to Iowa Land & Livestock Company and

4

thus owned the mineral estate of the Property by virtue of the 1949 Commissioners' Deed. RME did not dispute that Three Sisters was the successor to Iowa Land & Livestock Company. However, it did dispute Three Sisters' claim to the mineral estate. Rather than incur the substantial cost of litigation, RME and Three Sisters came to the Settlement Agreement which was duly executed and recorded in the office of the County Clerk of Laramie County, Wyoming[.][4]

[¶10] Family Tree hired a landman, Maggie Atkinson, to trace the ownership of their mineral interests. In an affidavit, Ms. Atkinson explained her findings with respect to Three Sisters' claimed interest in the Section 7 minerals:

> 36. At no time in all my research, aside from the 2001 Settlement Agreement, did I find any conveyance to Three Sisters. I found no quitclaim, warranty, or other deed in the chain of title for Section 7 wherein Three Sisters was a grantee of any rights, other than their inclusion on the 2001 Settlement Agreement contained at Book 1601, Page 163.

## C. District Court Proceedings

[¶11] On June 24, 2014, Family Tree filed in district court a Complaint for Quiet Title and Declaratory Judgment against Anadarko and Three Sisters. Through its complaint, Family Tree alleged that the recorded settlement agreement between Anadarko and Three Sisters was a cloud on its title to its Section 7 mineral interests and it requested that the court declare the settlement agreement null and void and that it quiet title to the property in Family Tree and the owners through whom Family Tree claimed its interest. After answers were filed, the parties eventually filed cross motions for summary judgment.

[¶12] The primary dispute between the parties concerned the effect of Laramie County's 1911 tax assessment against Union Pacific's Section 7 minerals and its subsequent tax sale of the property. Anadarko and Three Sisters argued that the tax assessment against Union Pacific's minerals in place was unconstitutional and invalid and the resulting tax deed was therefore void *ab initio*. Family Tree argued that the tax assessment and tax deed were valid and that the attempt by Anadarko and Three Sisters to challenge the assessment and deed was barred by the six-year statute of limitations.

---

[4] The only evidence Anadarko and Three Sisters cited in support of this explanation was the 2001 Settlement Agreement, which did not identify Three Sisters as a successor to Iowa Land & Livestock Company. The record thus contains no evidence to verify that claim by Three Sisters.

[¶13] On February 11, 2016, the district court issued a decision letter announcing its ruling in favor of Family Tree. The court found that while modern law would not allow taxation of minerals in place, Laramie County's taxing authority was much broader under Wyoming law in 1911. The court thus concluded that the tax was valid and that Union Pacific forfeited its rights to the Section 7 minerals when it failed to redeem or otherwise recover the property within the time allowed by statute. The court also applied the after-acquired doctrine to unify the Section 7 mineral and surface estates, concluding:

> In Wyoming, "[w]hen the surface is granted without reference to the mineral estate, it is presumed the mineral estate is included." *Gilstrap v. June Eisele Warren Trust*, 2006 WY 21, ¶ 15, 106 P.3d 858, 863 (Wyo. 2005). Under the doctrines of estoppel by deed and after-acquired title, which have been adopted in Wyoming, "one who acquires a title or estate which he has previously conveyed is estopped to assert his after-acquired title as against the grantee or his successor." *Kennedy Oil v. Lance Oil & Gas Company, Inc.*, 2008 WY 9, ¶ 28, 126 P.3d 875, 884 (Wyo. 2006) (quoting 3 American Law of Property §§ 15.18, 15.19 (A. James Casner ed., 1952)); *see also Town of Glenrock v. Abadie*, 71 Wyo. 414, 259 P.2d 766, 769 (Wyo. 1953) (noting "the general rule is that, if a grantor of real estate having no title, a defective title, or an estate less than that which he assumed to grant subsequently acquires the title or estate which he purported to convey, or perfect his title, such after acquired or perfected title will inure to the grantee or to his benefit."). Pursuant to these doctrines, by virtue of the various warranty deeds, U.G. John's title to the minerals was superior, at the time of the Commissioners' Deed, to Iowa Land and Livestock Company's title. Similarly, Bell Livestock Company's mineral title was superior to U.G. John's, and so on until the title to the surface and minerals unified in Howard S. Christensen in 1949. Therefore, Family Tree's ultimate title to the minerals is not affected by the timing of any conveyances or by the fact that the Commissioners' Deed was not delivered and recorded until 1949.

[¶14] Based on its analysis, the district court concluded that neither Anadarko nor Three Sisters had an interest in the Section 7 minerals and it declared their 2001 Settlement Agreement an invalid cloud on the title. The court thereafter, on March 29, 2016, entered

its Order Granting Summary Judgment.  On April 28, 2016, Anadarko and Three Sisters filed a timely notice of appeal to this Court.[5]

## STANDARD OF REVIEW

[¶15]  We review the district court's entry of summary judgment as follows:

> Summary judgment can be an appropriate resolution of a declaratory judgment action, and we invoke the usual standard for review. *Continental Western Ins. Co. v. Black*, 2015 WY 145, ¶ 13, 361 P.3d 841, 845 (Wyo. 2015). Summary judgment can be sustained only when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Felix Felicis, LLC v. Riva Ridge Owners Ass'n*, 2016 WY 67, ¶ 29, 375 P.3d 769, 275 P.3d 769, 778 (Wyo. 2016). We review a grant of summary judgment deciding a question of law de novo. *Id*. We accord no deference to the district court on issues of law and may affirm the summary judgment on any legal grounds appearing in the record. *Sky Harbor Air Serv., Inc. v. Cheyenne Reg'l Airport Bd.*, 2016 WY 17, ¶ 40, 368 P.3d 264, 272 (Wyo. 2016).

*Cheyenne Newspapers, Inc. v. City of Cheyenne*, 2016 WY 125, ¶ 10, 386 P.3d 329, 333 (Wyo. 2016).

## DISCUSSION

[¶16]  The sole question Anadarko has presented on appeal is whether Laramie County's 1912 tax sale of the Section 7 minerals and the resulting tax deed were void *ab initio*. The answer to this question is pivotal in resolving this title dispute because a void deed is a nullity, making it ineffective to transfer title and ineffective to set a statute of limitations running.  *Wayt v. Urbigkit*, 2007 WY 34, ¶ 10, 152 P.3d 1057, 1060 (Wyo. 2007) (void title wholly ineffective to pass title); *Denny v. Stevens*, 73 P.2d 308, 310 (Wyo. 1937) (tax deed void on its face will not set statute of limitations in motion).  The ineffectiveness of a void deed distinguishes it from a voidable deed:

> When used in its correct sense, the term "voidable," with regard to a deed, has much the same meaning that it has in the

---

[5] Three Sisters did not file a separate brief on appeal but signed onto the briefing by Anadarko.  For ease of reference, when discussing their arguments on appeal, we will refer to Appellants Anadarko and Three Sisters collectively as Anadarko.

law of contracts—that is, as meaning a writing that is both operative to convey the property and creative of contractual obligations unless and until set aside by the court. A voidable deed is capable of being either avoided or confirmed. The word "void," on the other hand, implies that the deed is invalid in law for any purpose whatsoever, such as a deed to effectuate a prohibited transaction. A voidable deed must be attacked, if at all, directly, but a deed that is void may be collaterally attacked by anyone whose interest is adversely affected by it. The recording of a void deed is legally insufficient to create a legal title and affords no protection to those claiming under it.

23 Am.Jur.2d *Deeds* § 163 (Dec. 2016 update) (footnotes omitted); *see also First Interstate Bank of Sheridan v. First Wyo. Bank, N.A.*, 762 P.2d 379, 383 (Wyo. 1988) (quoting *Fallon v. Triangle Mgmt*, 215 Cal. Rptr. 748, 750 (Cal. App. 1985)) ("Until a voidable deed is declared void, it is fully operative."); *Lake Canal Reservoir Co. v. Beethe*, 227 P.3d 882 (Colo. 2010) ("A tax deed that is not void may still be voidable, so long as the claim to recover property is brought within the applicable statute of limitations.").

[¶17] The Colorado Supreme Court has elaborated on the interplay between a statute of limitations and a void or voidable tax deed:

> Whether a deed is void or voidable entirely shapes the rights that can be claimed under it once the statute of limitations has expired:
>
> > A void deed is a nullity, invalid ab initio, or from the beginning, for any purpose. It does not, and cannot, convey title, even if recorded.... In contrast, a voidable deed conveys property and creates legal title unless, and until, it is set aside by the court.

*Lake Canal Reservoir Co.*, 227 P.3d at 886-87 (quoting *Delsas ex rel. Delsas v. Centex Home Equity Co.*, 186 P.3d 141, 144 (Colo. App. 2008)).

[¶18] In light of these principles, the question before us, stated in broad terms, is whether the tax deed is void, meaning it is subject to collateral attack at any time, or voidable, meaning Anadarko's present challenge to its validity is barred by the statute of

limitations.[6] Our resolution of the title dispute between Anadarko and Family Tree thus depends on whether the alleged defect in Laramie County's 1911 tax assessment rendered the tax deed void. This requires that we answer two narrower questions: A) What types of defects in a tax assessment will render a tax deed void?; and B) Is the alleged defect in Laramie County's 1911 tax of the Section 7 minerals that type of a defect?

## A. Rule Governing Whether Tax Assessment Defect will Void Tax Deed

[¶19] Anadarko argues that Laramie County's 1911 tax assessment against the Section 7 minerals violated the Wyoming Constitution and that any constitutional defect in a tax assessment mandates a conclusion that the resulting tax sale and deed were void. Family Tree counters that under Wyoming precedent, a tax deed is void only if a defect can be found on the face of the deed. We disagree with both positions.

[¶20] In two of our early cases addressing the statute of limitations for challenging a tax deed, this Court held that a tax deed that is void on its face will not set in motion the statute of limitations applicable to the recovery of property sold for taxes. *Mathews v. Blake*, 92 P. 242, 244 (Wyo. 1907); *Denny*, 73 P.2d at 310. In *Denny*, the Court cited to Colorado precedent that described a deed that is fair on its face as "one where extraneous evidence is necessary to show the illegality of the conveyance." *Id*. at 310. It is based on this language that Family Tree argues:

> Where a deed was fair on its face, but extrinsic evidence could show it to be invalid or voidable, a party wishing to invalidate the deed has an affirmative obligation to enforce its rights within the statutorily prescribed statute of limitations.

---

[6] We recognize that a legislature may limit challenges to even a void deed by specifically imposing a statute of limitations on challenges to a void deed. *Shaffer v. Mareve Oil Corp.*, 204 S.E.2d 404, 409 (West Va. 1974) (citing *Saranac Land & Timber Co. v. Comptroller of New York*, 177 U.S. 318, 20 S.Ct. 642, 44 L.Ed. 786 (1900)) ("A short statute of limitations may validly bar an attack on a jurisdictionally defective or void tax deed."). Indeed, the Wyoming legislature did just that in 1975 with its enactment of Wyo. Stat. Ann. § 34–2–132, which limited the time for challenging a tax deed and applied the time limitation "regardless of whether the tax deed or any of the proceedings upon which it is based are void or voidable for any reason, jurisdictional or otherwise." Wyo. Stat. Ann. § 34-2-132(b) (LexisNexis 2015). The provisions of Wyo. Stat. Ann. § 34-2-132 are, however, expressly not applicable to mineral tax deeds. Wyo. Stat. Ann. § 34-2-135 (LexisNexis 2015). The statute of limitations we are therefore concerned with is the six-year limitations period found at Wyo. Stat. Ann. § 39-13-108(e)(vii)(D) (previously codified at Wyo. Comp. Stat. § 2395 (1910)), which specifies that "[n]o action for the recovery of real property sold for the nonpayment of taxes shall be maintained unless commenced within six (6) years after the date of sale for taxes." This statute does not contain the same clear statement of applicability to void and voidable deeds and we therefore interpret it to apply only if the deed in question is voidable, not void.

9

[¶21] Essentially, Family Tree contends that since *Denny* holds that a facial defect in a tax deed will render that deed void, the corollary must also be true, that a tax deed can only be declared void if the alleged defect in the deed appears on the deed's face. We find no support for this corollary rule in either the *Denny* decision itself or in our decisions subsequent to *Denny*.

[¶22] First, although the Court in *Denny* did cite to the foregoing language concerning when a deed would be deemed fair on its face, we do not read this as a holding by the Court that necessarily proscribed consideration of extrinsic evidence. To the contrary, the Court went on to say:

> Something more, however, than an apparent contradiction in its terms is meant when we speak of a patent being void on its face. It is meant that the patent is seen to be invalid, either when read in the light of existing law, or by reason of what the court must take judicial notice of; as, for instance, that the land is reserved by statute from sale, or otherwise appropriated, or that the patent is for an unauthorized amount, or is executed by officers who are not intrusted by law with the power to issue grants of portions of the public domain.

*Denny*, 73 P.2d at 310 (quoting *St. Louis Smelting & Refining Co. v. Kemp*, 104 U.S. 636, 644, 26 L.Ed. 875 (1881)).

[¶23] This language suggests that the Court recognized that a search for a facial defect in a tax deed might very well encompass consideration of information outside the document itself. Perhaps more importantly, however, is the fact that the Court in *Denny* specifically declined to address the question whether a tax deed could be declared void for a reason other than a facial defect. In particular, it was argued to the Court that the tax deed in question was void for jurisdictional defects and the statute of limitations would not run regardless of whether those defects appeared on the face of the deed or not. *Denny*, 73 P.2d at 309-10. The Court acknowledged the argument but concluded it was one, among others, that the Court need not and would not address. *Id*. at 310.

[¶24] Based on these considerations, we read *Denny* to hold no more than that a facial defect in a tax deed is one ground, not the only ground, for finding a tax deed void. Our decisions subsequent to *Denny*, which addressed defects other than facial defects, verify this reading. *See, e.g., Thompson-Green v. Estate of Drobish*, 2006 WY 126, ¶ 12, 143 P.3d 897, 901 (Wyo. 2006) (failure of tax purchaser to make diligent effort to serve notice of redemption period on all co-tenants rendered tax deed void); *McCarthy v. Union Pac. Ry. Co.*, 131 P.2d 326, 328 (Wyo. 1942) (declaring tax deed void where tax assessment was not made in name of property's true owner).

10

[¶25]  We turn then to Anadarko's argument that if a tax assessment violates any state constitutional provision, the resulting tax sale and tax deed must be deemed void.  We rejected Family Tree's proposed ground for finding a tax deed void as being too narrow, and we now reject Anadarko's proposed ground as too broad.

[¶26]  There are jurisdictions that hold that a defective tax assessment will render the resulting tax sale and tax deed void.  *See, e.g., Weir v. Gillespie*, 498 N.E.2d 177, 180 (Ohio Ct. App. 1985) ("A tax purchaser acquires no title, at law or in equity, unless the land has been taxed and a sale conducted according to law."); *Dawdy v. Holt*, 662 S.W.2d 818, 819 (Ark. 1984) ("[I]t has long been the law in Arkansas that when a tax deed to mineral interests derives from a defective assessment, it is void."); *Thaxton v. Beard*, 201 S.E.2d 298 (W. Va. 1973) (tax deed must be supported by valid tax assessment); *Lehfeldt v. Adams*, 303 P.2d 934, 936 (Mont. 1956) (invalid assessment on minerals in place resulted in void tax deed); *Kimble v. Allen*, 298 P.2d 1042, 1044 (Okla. 1956) (tax deed void where property listed and sold for amount in excess of taxes owing); *Cameron Estates v. Deering*, 123 N.E.2d 621, 623-24 (N.Y. 1954) (double assessment rendered tax deed void).  In *Cameron Estates,* the New York court explained the policy served by its ruling:

> * * * A Statute of Limitations is one of repose designed to put an end to stale claims and was never intended to compel resort to legal remedies by one who is in complete enjoyment of all he claims, Cooley on Constitutional Limitations, p. 366, nor may it be used to transfer property from the true owner to a stranger simply because the void tax deed was not challenged within six years from the date of recording. *Cromwell v. MacLean*, 123 N.Y. 474, 25 N.E. 932. Courts in sister States have applied the same principle, *Campbell v. City of Plymouth*, 293 Mich. 84, 291 N.W. 231; *Warren v. Indiana Telephone Co.*, 217 Ind. 93, 26 N.E.2d 399, which is reflected by leading text writers. 3 Cooley on Taxation (4th ed.), § 1382; Blackwell on Tax Titles (5th ed.), § 155, and Burroughs on Taxation, p. 301.
>
> The logic of such a view is inescapably correct, for otherwise the recording of the deed resulting from such a proceeding would transform the owner's absolute title in fee simple into a right of action only, the exercise of which is subject to time limitation. * * *

*Cameron Estates*, 123 N.E.2d at 624.

11

[¶27]  The policy cited by the New York court is compelling.  So too, however, is the policy of promoting the reliability of property records.  Our Court has recognized this tension in discussing deed defects that will render a deed voidable as opposed to void.

> * * * [I]t is against the policy of the recording acts to hold an acknowledgment void because of the secret interest of an officer taking and certifying it. The effort should be to prevent rather than allow hidden defects in the evidence of public records. If voidable only, it is sufficient to authorize the record, if not previously avoided. So, too, as has been seen, it may be avoided at any time after record and before the rights of third parties have attached. This, as it seems to us, furnishes the grantor with all the protection he has a right to demand as against the consequences of his own acts, and at the same time leaves to the recording acts their legitimate power and effect.

*Harney v. Montgomery*, 213 P. 378, 383 (Wyo. 1923) (quoting *Nat'l Bank of Fredericksburg v. Conway*, 1 Hughes, 37, 46, 17 Fed. Cas. No. 10,037); *see also Grose v. Sauvageau*, 942 P.2d 398, 403 (Wyo. 1997) ("Public policy requires that subsequent purchasers be able to rely on the title shown in public records."); *Shaffer*, 204 S.E.2d at 411 ("[P]ublic policy is to require every taxpayer to bear his share of the taxes and to obtain certainty in land titles so that the land may be productively used.").

[¶28]  We are also mindful of the policy objectives underlying any statute of limitations.  We have observed:

> The purpose of statutes of limitation is to save courts from stale claim litigation; spare citizens from having to defend when memories have faded, witnesses have died or disappeared and evidence is lost; *prevent parties from sleeping on their rights; and require diligence.*

*Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 2015 WY 127, ¶ 24, 357 P.3d 1118, 1126  (Wyo. 2015) (quoting *Lieberman v. Mossbrook*, 2009 WY 65, ¶ 25, 208 P.3d 1296, 1305 (Wyo. 2009)) (emphasis in original).

[¶29] Against the backdrop of these competing policy considerations, we must determine where the line should be drawn between a tax assessment defect that renders a tax deed void and one that renders the deed voidable.  In our search for Wyoming cases that define tax assessment defects that will render a tax deed void, we found only one type of defect in the assessment itself that had been addressed: the taxing entity's failure to assess the property tax against the true owner of the property.  *See Morad v. Brown*,

549 P.2d 312, 314 (Wyo. 1976); *Tibbals v. Bd. of County Com'rs of Fremont County*, 286 P.2d 598, 599-600 (Wyo. 1955); *McCarthy*, 131 P.2d at 328; *Hecht v. Boughton*, 2 Wyo. 385, 402-03 (1881). In each of these cases, the Court held that a tax assessment issued against someone other than the record owner of the property resulted in a void tax sale and tax deed. *Id.* The Court in *McCarthy* explained that the defect was fatal to the deed because of the jurisdictional nature of the requirement that the property be assessed against the record owner. *McCarthy*, 131 P.2d at 329. The Court further commented in that decision:

> It may be laid down as a general rule of law, that where ***an irregularity-of such a character as to affect the power to sell***-takes place in any part of the proceeding, and the owner of the land, being aware of the fact, is silent, and takes no steps to prevent the sale, but permits it to proceed, or even eventually consents to waive the irregularity, a sale, under such circumstances, will not be recognized in a court of law. The officer derives his authority from the law, and not from the owner. He must obey the law, and not the orders of a private individual. When he keeps within the pale of his authority, minor irregularities may be cured or waived by the party in interest, without impairing the official character and validity of the proceedings; but the authority itself or any substantial link in the series of acts which are necessary to establish the existence of the power, cannot be supplied or enlarged, so as to give official character and validity to acts not authorized by the plain provisions of the statute.

*McCarthy*, 131 P.2d at 333 (quoting Blackwell on Tax Titles 513 (4th ed.)) (emphasis added).

[¶30] *McCarthy* instructs that the type of defect in an assessment that will render the resulting tax sale and tax deed void is a jurisdictional defect. This conclusion is consistent with the approach recently announced by the Colorado Supreme Court in *Lake Canal Reservoir Co. v. Beethe*, 227 P.3d 882 (Colo. 2010), where that court addressed the validity of a tax deed that was issued following a tax assessment that was alleged to have been made in violation of the Colorado constitution. We find the Colorado court's reasoning persuasive and adopt its approach to evaluating defects alleged in a tax assessment and their effect on the resulting tax deed.

[¶31] In *Lake Canal Reservoir*, the court addressed a title dispute over a tract of land containing a reservoir used for irrigation, farming uses, and recreation. *Lake Canal Reservoir*, 227 P.3d at 884. Weld County assessed taxes on the property in 1993, and those taxes were not paid. *Id.* The county then placed a tax lien on the property and

13

eventually sold the property and issued a tax deed, which was recorded in 1997. *Id*. The petitioners filed a quiet title action in 2003 alleging that the tax deed was void on a number of grounds, including an allegation that the underlying tax assessment violated a Colorado constitutional provision that restricted taxation of reservoirs used for irrigation. *Id*. The lower court found the tax deed void, but an intermediate appellate court reversed that holding and ruled that the tax deed was voidable, not void, and that petitioners' challenge was therefore barred by the five-year statute of limitations. *Id*. The Colorado Supreme Court affirmed. *Id*.

[¶32] In addressing whether the tax deed was void or voidable, the Colorado Supreme Court undertook a review of its decisions regarding the validity of tax deeds and announced a rule the court found captured the intent of its prior decisions. *Lake Canal Reservoir*, 227 P.3d at 887-89. The court held:

> We acknowledge that throughout our caselaw, we have been imprecise in our use of the terms "void," "voidable," "void on its face," and "invalid." We further acknowledge that, in particular, the language in *North American Realty* is not clear and is subject to different interpretations. However, we take the opportunity today to clarify our caselaw and hold that ***the line between a void and a voidable tax deed does not depend on the nature of the evidence used to determine the deed's defect, but rather on the nature of the defect itself. A deed is void—and therefore not subject to the statute of limitations—when the taxing entity lacked the authority or jurisdiction to issue it.***

*Lake Canal Reservoir*, 227 P.3d at 889 (emphasis added).

[¶33] Using this rule, the Colorado court addressed the alleged defects in the tax deed to the reservoir property.[7] The court found that Weld County had likely violated the constitutional limitation on taxation of reservoirs when it taxed the entire reservoir, including the portion used exclusively for irrigation, but it concluded that the defect made the tax deed voidable rather than void. *Id*. at 891. The court reasoned:

> In sum, where the authority or jurisdiction of a taxing entity is entirely lacking—as in the *Wood* case (had our interpretation of the taxation laws concluded that mining

---

[7] While the court addressed a number of alleged defects in the tax proceedings, including defects alleged in the tax sale notice and property description, we are concerned only with the court's holding regarding the alleged constitutional defect in the tax assessment. Anadarko does not allege defects in the tax sale notice or property description relating to the Section 7 minerals and we therefore have no need to and do not address or adopt the Colorado court's rulings on the notice and property description questions.

interests could not be taxed when the mining property was owned by the United States), or where church property was taxed—the resulting deed is void. But where a taxing entity has the authority and jurisdiction to tax but has made errors in exercising that authority, the deed is merely voidable. As applied here, we find that the assessment may have been faulty, but it was not entirely without authority.

As noted above, the constitutional tax exemption is available only for property used exclusively by its owner for reservoir purposes. Given the evidence in the record that portions of the Reservoir Tract were used for a variety of recreational and farming purposes, the Weld County assessor may well have correctly exempted only a portion of the Reservoir Tract. *See Logan Irrigation Dist. v. Holt*, 110 Colo. 253, 257, 133 P.2d 530, 531 (1943) (holding that land dependent on but not itself used as a reservoir was properly subject to taxation despite prior years of tax exemption). While the assessed tax may have been excessive, at least some of that assessment was authorized. The deficiencies of the assessment here speak to its scope rather than its underlying authority.

*Lake Canal Reservoir*, 227 P.3d at 891 (footnote omitted).

[¶34]   This holding is interesting because the provision of the Colorado constitution that restricts taxation of reservoirs used for irrigation purposes is not equivocal. It states that such properties "shall not be separately taxed." [8]  Colo. Const. Art. 10, § 3(1)(d); *see also* Colo. Rev. Stat. Ann. § 39-3-104 (West 2016) ("Ditches, canals, and flumes which are owned and used by any person exclusively for irrigating land owned by such person shall be exempt from the levy and collection of property tax."). Yet the Colorado court was able to draw what we can only describe as a very fine line, ruling that the defect in the

---

[8] The constitutional provision refers to ditches, canals, and flumes, but we understand the provision has been interpreted to apply to reservoirs.

With regard to the assessment issue, reservoirs in the State of Colorado are not subject to separate taxation so long as they are used by their owners exclusively for irrigation purposes. *See* Colo. Const. art. 10, § 3(1)(d); § 39–3–104, C.R.S. (2009); *Shaw v. Bond*, 64 Colo. 366, 369–70, 171 P. 1142, 1144 (1918).

*Lake Canal Reservoir*, 227 P.3d at 890.

assessment against the exempt portion of the reservoir was a defect in the scope of the tax, not an assessment outside the county's taxing authority.

[¶35] We view the fine line drawn by Colorado court in *Lake Canal Reservoir* as a reflection of the court's reluctance to disturb settled property records without the clearest of showings that the taxing entity exceeded its taxing authority. We liken it to our reluctance to allow collateral jurisdictional attacks on judgments after the time for a direct appeal or challenge has passed. In such situations, we must consider the need for "a disciplined observance of jurisdictional limits coupled with the need for finality of judgments." *Matter of Guardianship of MKH*, 2016 WY 103, ¶ 25, 382 P.3d 1096, 1102 (Wyo. 2016) (quoting *Linch v. Linch*, 2015 WY 141, ¶ 18, 361 P.3d 308, 314 (Wyo. 2015)). To balance these competing considerations, we have held that we will set aside a final judgment as void for lack of jurisdiction in only:

> the exceptional case in which the court that rendered judgment lacked even an "arguable basis" for jurisdiction. *Nemaizer v. Baker*, 793 F.2d 58, 65 (C.A.2 1986); *see, e.g., [U.S. v.] Boch Oldsmobile[, Inc.,], supra* [909 F.2d 657], at 661–662 [(C.A.1 1990)] ("[T]otal want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and ... only rare instances of a clear usurpation of power will render a judgment void" (brackets and internal quotation marks omitted)).

*Matter of Guardianship of MKH*, ¶ 29, 382 P.3d at 1103 (quoting *Linch*, ¶ 19, 361 P.3d at 314.

[¶36] Because we share the Colorado Supreme Court's reluctance to set aside settled property records, we adopt a variation on that court's announced ruling. We agree with the Colorado court that:

> the line between a void and a voidable tax deed does not depend on the nature of the evidence used to determine the deed's defect, but rather on the nature of the defect itself. A deed is void—and therefore not subject to the statute of limitations—when the taxing entity lacked the authority or jurisdiction to issue it.

*Lake Canal Reservoir*, 227 P.3d at 889.

[¶37] We add to this a caveat. When the alleged defect is one in the tax assessment itself, we will find a lack of authority or jurisdiction on the part of the taxing entity only if there was a total want of jurisdiction, meaning there was no arguable basis for jurisdiction and the tax assessment was a clear usurpation of power.

16

[¶38] Having determined where we will draw the line between a tax assessment defect that will render a tax deed void and one that will render the tax deed voidable, we turn to our review of Laramie County's tax assessment against the Section 7 minerals.

**B.      Application of Rule Governing Tax Assessment Defects**

[¶39] Anadarko argues that Article 15, § 3 of the Wyoming Constitution prohibits the taxation of minerals in place and that Laramie County's 1911 tax assessment violated that constitutional bar, resulting in a void tax deed. We have little difficulty accepting the proposition that the 1911 tax assessment against the Section 7 minerals was erroneous. We do not, however, find this to be a jurisdictional error and we therefore reject the argument that the error rendered the tax deed void.

[¶40] Article 15, § 3 provides:

> All mines and mining claims from which gold, silver and other precious metals, soda, saline, coal, mineral oil or other valuable deposit, is or may be produced shall be taxed in addition to the surface improvements, and in lieu of taxes on the lands, on the gross product thereof, as may be prescribed by law; provided, that the product of all mines shall be taxed in proportion to the value thereof.

Wyo. Const. art 15, § 3 (LexisNexis 2015).

[¶41] This provision does not exempt minerals or mines from taxation. It is directed to the manner in which minerals will be taxed. In contrast, art. 15, § 12, which does exempt specific properties from taxation, provides:

> The property of the United States, the state, counties, cities, towns, school districts and municipal corporations, when used primarily for a governmental purpose, and public libraries, lots with the buildings thereon used exclusively for religious worship, church parsonages, church schools and public cemeteries, ***shall be exempt from taxation***, and such other property as the legislature may by general law provide.

Wyo. Const. art. 15, § 12 (LexisNexis 2015) (emphasis added).

[¶42] Importantly, article 15, § 12 authorizes the legislature to exempt other property of its choosing from taxation. In 1910, this resulted in the following statutory framework governing the county's taxing authority:

**§ 2321. Property exempt from taxation.** The following described property is hereby exempted from taxation:

**First.**—The property of the United States and of this state, the property of any county, township, incorporated cities, towns and school districts; public libraries; lots with the buildings thereon used exclusively for religious worship; church parsonages; public grounds by whomsoever donated to the public, including all places for the burial of the dead.

**Second.**—[Fire extinguishing equipment and property]

**Third.**—Household and kitchen furniture, beds and bedding, wearing apparel of every person, and the food provided for each family, not to exceed in all, the value of one hundred dollars.

**Fourth.**—The polls of all persons who have arrived at the age of fifty years.

**Fifth.**—[Property used in the manufacture of beet products]

**§ 2322. Exemptions—Educational—Fraternal—Charitable.** Lands, with the buildings thereon, used for schools, orphan asylums or hospitals, and for lodge rooms for the meetings of all secret, benevolent and charitable societies or associations shall be exempted from taxation so long as said lands and buildings are not used for private profit.

**§ 2323. Bonds exempt from taxation.** [Exempt bonds described]

**§ 2324. Property subject to taxation.** All other property, real and personal, within this state is subject to taxation in the manner herein directed, * * *. * * *

* * * *

**§ 2449. Return for assessment.** In proportion to the value thereof the gross product of all mines and mining claims from which gold, silver and other deposits precious metals, soda, saline, coal, mineral oil, or other valuable deposit is, or may hereafter be produced, while the same are being worked or developed, but not while the same are simply in the course of development, shall be returned by the owner, owners, lessee or operator thereof for assessment for taxation, assessed for taxation and taxed in the manner provided for in this chapter, and such tax shall be in addition to any tax which may be assessed upon the surface improvements of such

> mines or mining claims, and in lieu of taxes upon the land of
> such claims while the same are being worked or operated.

Wyo. Comp. Stat. (1910).

[¶43] Under the 1910 statutes, which governed Laramie County's taxing authority in 1911, minerals were not exempted from taxation and the county clearly had authority to tax minerals. Wyo. Stat. Comp. § 2324 (1910) ("All other property, real and personal, within this state is subject to taxation in the manner herein directed[.]").[9] We presume, however, that had Union Pacific timely challenged the 1911 tax assessment, there is a fair likelihood it would have succeeded in having the tax set aside. *See Milliron Oil Co. v. Connaghan*, 302 P.2d 256, 259 (Wyo. 1956) (interpreting statutory provision materially similar to Wyo. Comp. Stat. § 2449 (1910) and holding that no valid assessment could be made against minerals until produced). The error in the 1911 assessment was not, however, a clear jurisdictional error. It was an error in the manner of taxation—in the when and how of the assessment.

[¶44] Finding no clear usurpation of the county's taxing power, we conclude that the error in Laramie County's tax assessment against the Section 7 minerals rendered the resulting tax deed voidable not void. Anadarko's challenge to the validity of the tax deed is therefore barred by the six-year statute of limitations. *See* Wyo. Stat. Ann. § 39-13-108(e)(vii)(D) (LexisNexis 2015) (previously codified at Wyo. Comp. Stat. § 2395 (1910)).

## C.   After-Acquired Title Doctrine

[¶45] Anadarko did not state an issue for our review with respect to the district court's application of the after-acquired title doctrine. Anadarko does contend, however, that the court erred in applying the doctrine because the doctrine has no application to a void deed. Because we have determined the tax deed was not void, we also reject this argument. Anadarko's remaining argument with respect to the doctrine's application is that the district court erred in applying the doctrine because Anadarko's predecessor in interest had no intention to perfect title. Other than citing cases, Anadarko provides no analysis or argument on this question, and we therefore do not review any further the district court's application of the after-acquired title doctrine. *See Golden v. Guion*, 2016 WY 54, ¶ 31, 375 P.3d 719, 727, n.5 (Wyo. 2016) (Court does not consider issues not supported by cogent argument).

---

[9] Current statutes include the "[l]ands for mines or mining claims as prescribed in section 3, article 15, Wyoming constitution" in the list of property statutorily exempted from taxation. Wyo. Stat. Ann. § 39-11-105 (a) (xxviii) (LexisNexis 2015).

## CONCLUSION

[¶46]  We hold that the line between a void and a voidable tax deed does not depend on the nature of the evidence used to determine the deed's defect, but rather on the nature of the defect itself. A deed is void—and therefore not subject to the statute of limitations— when the taxing entity lacked the authority or jurisdiction to issue it.  When the alleged defect is one in the tax assessment itself, we will find a lack of authority or jurisdiction on the part of the taxing entity only if there was a total want of jurisdiction, meaning there was no arguable basis for jurisdiction and the tax assessment was a clear usurpation of power.

[¶47]  The error in Laramie County's 1911 tax assessment against the Section 7 minerals was not a clear jurisdictional error, and finding no clear usurpation of the county's taxing power, we conclude that the error rendered the resulting tax deed voidable not void. Because the validity of the tax deed was not challenged within the time allowed by the six-year statute of limitations, the tax deed has been and remains fully operative.

[¶48]  Affirmed.

**FOX, Justice,** dissenting.

[¶49]   I respectfully dissent.  I concur with the majority's analysis of what makes a deed void rather than voidable, but I conclude that the application of the law to the tax deed at issue must result in finding the deed is void.

[¶50]   There is no dispute that Article 15, § 3 of the Wyoming Constitution prohibits the taxation of minerals in place; and it meant the same thing in 1911, even though it may have been misunderstood at that time.  To the extent there were statutes in 1911 which may have authorized taxation of minerals in place, they were unconstitutional.  *See, e.g., Billis v. State*, 800 P.2d 401, 450 (Wyo. 1990) ("The legislature may not enact a statute which is in conflict with a provision of the state Constitution.") (internal citations omitted)).  The 1911 tax assessment was not an error in the "when and how;" it was a complete failure of authority to tax.  The tax at issue here resembles the cases discussed by the majority in which tax deeds were found to be void because of the taxing entities' failure to assess the property tax against the true owner of the property.  *Morad v. Brown*, 549 P.2d 312, 314 (Wyo. 1976); *Tibbals v. Bd. of Cty. Comm'rs of Fremont Cty.*, 286 P.2d 598, 599-600 (Wyo. 1955); *McCarthy v. Union Pac. Ry. Co.*, 131 P.2d 326, 328 (Wyo. 1942); *Hecht v. Boughton*, 2 Wyo. 385, 402-03 (1881).  Here, Laramie County did not act "within the pale of [its] authority," *McCarthy*, 131 P.2d at 333, and the tax deed is void.  *See Dufur v. Nampa & Meridian Irrigation Dist.*, 912 P.2d 687, 693 (Idaho Ct. App. 1996) ("Because the noted statutes were found to be unconstitutional, the tax deeds were appropriately voided and title was restored to the Dufurs.").  *Lake Canal Reservoir Co. v. Beethe*, 227 P.3d 882 (Colo. 2010), likewise fails to support the majority's conclusion.  There, the court found that although the tax on the reservoir "may have been excessive, at least some of that assessment was authorized."  *Id.* at 891.  Here, the county completely lacked authority to tax minerals in place.  There was no arguable basis for jurisdiction and the tax assessment was a clear usurpation of power.

[¶51]   While I appreciate the value of finality in real estate transactions, that may be a matter best left to the legislature.  In fact, the legislature has taken action to impose a statute of limitations on void tax deeds, Wyo. Stat. Ann. § 34-2-132 (LexisNexis 2015), and it expressly omitted mineral tax deeds from those provisions.  Wyo. Stat. Ann. § 34-2-135 (LexisNexis 2015).  "The legislature is presumed to act in a thoughtful and rational manner with full knowledge of existing law."  *Barlow Ranch, Ltd. P'ship v. Greencore Pipeline Co. LLC*, 2013 WY 34, ¶ 57, 301 P.3d 75, 94 (Wyo. 2013).  If it had wanted to impose a statute of limitations on void tax deeds, it would have here.

[¶52]   For these reasons, I would find that the tax deed at issue is void.